# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHARLES HUDSON HEAD III,

Defendant-Appellant.

UNPUBLISHED
January 12, 2016

No. 323035
Wayne Circuit Court
LC No. 14-000993-FC

Before: TALBOT, C.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

A jury convicted defendant of third-degree criminal sexual conduct (CSC III), MCL 750.520d(1)(b), armed robbery, MCL 750.529, and assault with intent to do great bodily harm less than murder, MCL 750.84.[1] The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to a prison term of 50 to 75 years for each conviction, to be served concurrently, but consecutive to a term of imprisonment for which he had been on parole. Defendant appeals as of right. We affirm.

## I. SUFFICIENCY OF THE EVIDENCE

In a brief filed by appointed appellate counsel, defendant argues that the prosecutor failed to present sufficient evidence that he aided or abetted a principal in committing CSC III. In a pro se brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, defendant also challenges the sufficiency of the evidence to support his convictions of armed robbery and assault with intent to do great bodily harm less than murder.

We review de novo a criminal defendant's challenge to the sufficiency of the evidence supporting his convictions. *People v Harverson*, 291 Mich App 171, 175-177; 804 NW2d 757 (2010). We also consider de novo the legal question "whether alleged conduct falls within the scope of criminal law." *People v Cassadime*, 258 Mich App 395, 398; 671 NW2d 559 (2003). In deciding whether sufficient evidence exists "to sustain a conviction, a court must view the

---

[1] The jury acquitted defendant of additional counts of kidnapping and two counts of first-degree criminal sexual conduct.

evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Nowack*, 462 Mich 392, 399-400; 614 NW2d 78 (2000) (internal quotation and citation omitted).

> The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. The scope of review is the same whether the evidence is direct or circumstantial. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime. [*Id.* at 400 (internal quotation and citation omitted).]

"It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

## A. THIRD-DEGREE CRIMINAL SEXUAL CONDUCT

MCL 750.520d(1)(b) prohibits a person from engaging in "sexual penetration with another person" accomplished by "[f]orce or coercion." Whether force or coercion exists depends on all of the relevant circumstances, *People v Eisen*, 296 Mich App 326, 333; 820 NW2d 229 (2012). Force or coercion includes any of the circumstances listed in MCL 750.520b(1)(f)(*i*) to (*v*). MCL 750.520d(1)(b). Pursuant to MCL 750.520b(1)(f), force or coercion includes:

> (*i*) When the actor overcomes the victim through the actual application of physical force or physical violence.

> (*ii*) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats.

> (*iii*) When the actor coerces the victim to submit by threatening to retaliate in the future against the victim, or any other person, and the victim believes that the actor has the ability to execute this threat. As used in this subdivision, "to retaliate" includes threats of physical punishment, kidnapping, or extortion. . . .

The prosecution alleged that defendant committed CSC III by aiding or abetting another male in engaging in a forcible act of sexual penetration. To support defendant's conviction pursuant to an aiding or abetting theory of guilt, the prosecutor had to show that (1) defendant or some other person committed the crime charged, (2) defendant performed acts or offered encouragement that assisted the crime's commission, and (3) either (a) at the time that defendant gave aid or encouragement, he possessed (i) the requisite intent necessary to support his conviction of the charged crime as a principal, or (ii) knowledge that the principal intended the commission of the charged crime, or (b) "the criminal act committed by the principal is an incidental consequence which might reasonably be expected to result from the intended wrong." *People v Robinson*, 475 Mich 1, 6, 9; 715 NW2d 44 (2006) (internal quotations and citation

omitted); see also *People v Mass*, 464 Mich 615, 628; 628 NW2d 540 (2001). "An aider and abettor's state of mind may be inferred from all the facts and circumstances." *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999).

"To place the issue of aiding and abetting before a trier of fact, the evidence need only tend to establish that more than one person committed the crime, and that the role of a defendant charged as an aider and abettor amounts to something less than the direct commission of the offense." *People v Vaughn*, 186 Mich App 376, 382; 465 NW2d 365 (1990). "The phrase 'aids or abets'" encompasses "any type of assistance given to the perpetrator of a crime by words or deeds that are intended to encourage, support, or incite the commission of that crime." *People v Moore*, 470 Mich 56, 63; 679 NW2d 41 (2004). "In determining whether a defendant assisted in the commission of the crime, the amount of advice, aid, or encouragement is not material if it had the effect of inducing the commission of the crime." *Id.* at 71. "[W]hether the defendant performed acts or gave encouragement that assisted" "must be determined on a case-by-case basis." *Id.* (internal quotation and citations omitted).

Defendant complains that the record lacked evidence of "any exhortation, aiding, encouragement, or direction from [him] to the second male to commit the criminal sexual act." We disagree. The victim testified that she remained on a stairway inside defendant's house because defendant had twice struck her with an ax, that she removed her clothing for the second time on the stairway of the house because defendant had threatened to hit her with the ax again, that defendant stayed with her as she sat on the stairs at defendant's direction while a second man, the principal, went outside to search the victim's car, that when the second man returned from the victim's car, she complied with defendant's instructions that she turn around and "put [her] mouth on the carpet of the stairs," that defendant "told the other male to go upstairs and get a condom," that the other man got a condom, put it on, and placed his penis inside the victim's vagina, and that defendant continued standing near the victim during at least a portion of the sexual act.

The victim's testimony was sufficient to prove beyond a reasonable doubt that defendant aided or abetted the principal's act of sexual penetration. Defendant assisted, encouraged, and induced the principal's sexual act by forcing the victim to disrobe on the stairway, ordering that she place her mouth on the carpet immediately before telling the principal to obtain a condom, and remaining near the victim and the principal while he penetrated her vagina. See *Moore*, 470 Mich at 71. The same testimony was also sufficient to enable the jury to find beyond a reasonable doubt that when defendant assisted the principal, he intended for the principal to penetrate the victim's vagina, knowing that the principal intended to do so. See *Robinson*, 475 Mich at 6.

## B. ARMED ROBBERY

Defendant argues that the evidence was insufficient to prove that he possessed a weapon at the time of the larceny from the victim. This Court in *People v Gibbs*, 299 Mich App 473, 490-491; 830 NW2d 821 (2013), summarized the elements necessary to sustain a conviction of armed robbery under MCL 750.529:

> (1) [T]he defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in any manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [Internal quotation and citation omitted.]

The armed robbery statute proscribes possession of a weapon or other article "in the course of engaging in" a larceny from a person, and references MCL 750.530. MCL 750.530(2) defines "in the course of committing a larceny" to "include[] acts that occur in an attempt to commit the larceny, or during the commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property."

Defendant maintains that although the victim testified that defendant "threatened to kill the victim," she "complied with the order to empty her pockets without the existence or use of a weapon." Defendant's argument ignores the victim's testimony that as she descended the stairway, defendant walked behind her, she felt something hard strike the back of her head, she turned around, saw defendant standing close behind her, felt him hit her left arm, and noticed that defendant had struck her with an ax that "had a blue shirt or a blue towel" around the handle. The victim next remembered that while she and defendant remained on or near the stairs, she noticed bleeding from her head, she heard defendant, who still held the ax, tell her to empty the money in her pockets, and she removed from her pockets $10, her car keys, and a cell phone.

The victim's testimony was sufficient to permit a rational jury to find beyond a reasonable doubt that defendant possessed the ax "in the course of" committing a larceny from the victim. The evidence also permitted the jury to find beyond a reasonable doubt that the ax that defendant wielded qualified as "an article used or fashioned in a manner to lead [the victim] to reasonably believe the article is a dangerous weapon," especially after he had used the ax to strike the victim's head and caused it to bleed profusely. See MCL 750.529.

## C. ASSAULT WITH INTENT TO DO GREAT BODILY HARM

Defendant argues that although the evidence established that an assault took place, the evidence was insufficient to support a finding that he intended to do great bodily harm.

The crime of assault with intent to do great bodily harm, MCL 750.84(1)(a), requires the prosecutor to prove that the defendant committed "an assault, i.e., an attempt or offer with force and violence to do corporal hurt to another coupled with (2) a specific intent to do great bodily harm less than murder." *People v Bailey*, 451 Mich 657, 668-669; 549 NW2d 325 (1996), amended 453 Mich 1204 (1996). The victim testified that as she walked down the stairway, defendant followed behind her, she felt a hard object strike her head and knock her off balance, and defendant then struck her arm. The victim saw that defendant had struck her with an ax. The head wound bled profusely and necessitated staples to close it. The prosecutor also introduced photographs of the victim's injuries and a nurse's testimony about the injuries. See *People v Dillard*, 303 Mich App 372, 378; 845 NW2d 518 (2013) (the extent of an injury is

-4-

probative of the intent to cause the requisite quantum of harm). The evidence that defendant used an ax to strike the victim's head was sufficient to allow the jury to find beyond a reasonable doubt that defendant intended to cause great bodily harm.

Although defendant has submitted an affidavit denying that he intended to cause great bodily harm, the affidavit was not presented in the trial court, and therefore, is not properly before this Court. *People v Nix*, 301 Mich App 195, 203; 836 NW2d 224 (2013). Regardless, the affidavit would not compel a different result. Notwithstanding defendant's professed intent, the victim's testimony and other evidence of her injuries was sufficient to prove beyond a reasonable doubt that defendant acted with the specific intent to cause great bodily harm.

## II. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises additional issues in his Standard 4 brief, none of which require appellate relief.

## A. VALIDITY OF SEARCH WARRANT AFFIDAVIT

Defendant argues that the affidavit submitted in support of the search warrant for 8487 Penrod contained intentionally false information, specifically the attestation that defendant had carjacked the victim before taking her inside the house. Defendant raised this issue in a motion to suppress, which the trial court denied. The trial court concluded that even if the challenged information was not considered, the remaining allegations were sufficient to establish probable cause for the search.

"We review de novo a trial court's ultimate determination on a motion to suppress, and its factual findings for clear error. We review de novo underlying issues of law such as statutory questions or the application of a constitutional standard to uncontested facts." *People v Mullen*, 282 Mich App 14, 21; 762 NW2d 170 (2008).

In *Mullen*, 282 Mich App at 21-22, this Court explained:

> Whether a search is reasonable is a fact-intensive determination and must be measured by examining the totality of the circumstances. A reviewing court must give great deference to a magistrate's finding of probable cause to issue a search warrant. Accordingly, we do not review de novo the lower court's determination regarding the sufficiency of a search warrant affidavit. Rather, this Court need only ask whether a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause. To find a substantial basis, we must ensure that there is a fair probability that contraband or evidence of a crime will be found in a particular place. [Internal quotations and citations omitted.]

With regard to claims that a search warrant was based on false statements, this Court stated in *Mullen*, 282 Mich App at 22:

> The United States Supreme Court has found that false statements must be stricken from a search warrant affidavit:

-5-

[W]here the defendant makes a substantial preliminary showing that a *false statement knowingly and intentionally, or with reckless disregard for the truth,* was included by the affiant in the warrant affidavit, *and if the allegedly false statement is necessary to the finding of probable cause,* the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, *with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded* to the same extent as if probable cause was lacking on the face of the affidavit. [Internal quotation and citation omitted, emphasis in original.]

The trial court accurately summarized the contents of the search warrant affidavit, which stated:

The affiant is a sworn member of the Detroit Police Department, Sex Crimes Unit. . . . The sexual assault took place in the City of Detroit.

On June 25, 2013 the complainant states she was in her vehicle in the area of Evergreen and Joy Rd. Defendant #1 B/M/20's 5'5, 190 lbs, dk compl, red shorts, no shirt, *entered her vehicle with an ax and forced her to go to 8487 Penrod.* The defendant forced her inside. Once inside of the location the defendant beat her with the ax and both defendants[] forced her to have sexual intercourse, penis to vagina. Defendant #2 B/M/5'9, lt compl wore a condom. One of the defendants[] used a condom, the other one didn't.

The defendants took her ID, keys, Metro PCS Cell Phone, her McDonald's Uniform, a black memory card to her phone, $10, and some marijuana. The defendants[] held her inside of the house until 7 am. [Emphasis added.]

The parties agreed that the emphasized detail about a carjacking was false. However, we detect no clear error in the trial court's finding that defendant offered no evidence suggesting that the swearing officer "knowingly and intentionally, or with reckless disregard for the truth," included in the search warrant affidavit the victim's concededly false initial statement that she first encountered defendant when he got inside her car and forced her to drive to 8487 Penrod. *Mullen*, 282 Mich App at 22 (internal quotation, citation and emphasis omitted). Furthermore, the trial court correctly concluded that, on the basis of the affidavit's accurate summary of the victim's statement, and without consideration of her concededly false carjacking allegation, a reasonably cautious individual still would have found the existence of "a fair probability that contraband or evidence of a crime will be found" at 8487 Penrod. See *id.* at 22 (internal quotation and citation omitted).

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that trial counsel was ineffective because his unfamiliarity with discovery materials precluded him from presenting an effective defense. According to

defendant, trial counsel also failed to present any defense evidence or challenge the prosecutor's evidence. Because defendant did not raise this issue in an appropriate motion in the trial court, we limit our "review of the relevant facts . . . to mistakes apparent on the existing record." *People v Riley (After Remand),* 468 Mich 135, 139; 659 NW2d 611 (2003).

Whether a defendant has received the effective assistance of counsel comprises a mixed question of fact and law. *People v LeBlanc,* 465 Mich 575, 579; 640 NW2d 246 (2002). In *Strickland v Washington,* 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984), the United States Supreme Court held that a convicted defendant's claim of ineffective assistance of counsel includes two components: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." To establish the first component, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *People v Solmonson,* 261 Mich App 657, 663; 683 NW2d 761 (2004). With respect to the prejudice aspect of the test for ineffective assistance, the defendant must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceedings would have differed. *Id.* at 663-664. The defendant must overcome the strong presumptions that his "counsel's conduct falls within the wide range of professional assistance," and that his counsel's actions represented sound trial strategy. *Strickland,* 466 US at 689; see also *People v Odom,* 276 Mich App 407, 415; 740 NW2d 557 (2007). An appellate court cannot "substitute [its] judgment for that of counsel on matters of trial strategy, nor will [it] use the benefit of hindsight when assessing counsel's competence." *People v Payne,* 285 Mich App 181, 190; 774 NW2d 714 (2009).

Defendant has not established that trial counsel was ineffective. The record shows that defense counsel gave defendant the discovery materials and preliminary examination transcripts, visited defendant in jail in February 2014, March 2014, April 2014, and May 2014, filed a motion and obtained an order that the police administer defendant a polygraph examination, filed a motion to preclude reference to defendant's prior criminal record, and conveyed to defendant the prosecutor's plea offer. Defense counsel also filed a motion to quash the warrant to search 8487 Penrod. Defendant offered no specific criticism of counsel at the pretrial hearing or elsewhere on the record.

Defendant also fails to identify any specific motion that he believes trial counsel should have filed, or any specific discovery materials he believes counsel failed to review, and he fails to explain how he was prejudiced by counsel's trial defense. See *Strickland,* 466 US at 687-689; *Solmonson,* 261 Mich App at 663-664. The record reveals that counsel meaningfully challenged the prosecutor's evidence, including by effectively cross-examining the prosecutor's witnesses, moving for directed verdicts, and arguing in closing that the jury should acquit defendant of the charges. We note that the jury acquitted defendant of the three most serious charges he faced.

Concerning defendant's suggestion that defense counsel should have objected to the admissibility of the ax, defendant fails to explain on what basis counsel could have objected to the ax, and identifies no prejudice to his defense. See *Strickland,* 466 US at 687-689; *Solmonson,* 261 Mich App at 663-664. Regarding defendant's complaint that defense counsel erred in stipulating to the expertise of a forensic witness in the areas of identifying biological materials and DNA profiles, the record indicates that the witness possessed ample experience, expertise, and training in these areas of forensic science. Defendant identifies no basis for an

objection by defense counsel, and no prejudice that he endured arising from the expert's testimony, which established that no matches existed between the victim's rape kit samples and defendant's known DNA profile. See *Strickland*, 466 US at 687-689; *Solmonson*, 261 Mich App at 663-664.

## C. SCORING OF OFFENSE VARIABLES

Defendant urges that he is entitled to resentencing because the trial court misscored offense variables (OVs) 4, 7, and 10 of the sentencing guidelines. In reviewing guidelines scoring, we review for clear error the trial court's factual determinations. *People v Steanhouse*, ___ Mich App ___; ___ NW2d ___ (2015) (Docket No. 318329); slip op at 19 (internal quotation and citation omitted). We consider de novo questions of law concerning "the proper application of the sentencing guidelines." *Id*. We conclude that the trial court committed no clear error in finding that a preponderance of the evidence supported the scoring of OVs 4, 7, and 10.[2]

The trial court assessed 10 points for OV 4, which is appropriate when a "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). The victim informed the prosecutor that she felt that counseling was "definitely necessary," but she did not have the funds to obtain it. In light of the evidence that the victim endured multiple sexual penetrations, a robbery, and an assault by defendant with an ax, an experience that understandably would cause psychological harm, and the victim's statement that counselling was "definitely necessary," the trial court properly scored points for OV 4. As the trial court correctly observed, "the fact that treatment has not been sought is not conclusive." MCL 777.34(2). Even if the trial court erred in assessing 10 points for OV 4, however, the error would not entitle defendant to resentencing because a 10-point reduction to defendant's total OV score would not affect his placement in OV Level VI, and therefore, would not affect the appropriate guidelines range. *People v Francisco*, 474 Mich 82, 89-92; 711 NW2d 44 (2006).

The trial court scored 50 points for OV 7, which is appropriate where "[a] victim was treated with sadism . . . ." MCL 777.37(1). For purposes of OV 7, sadism is defined as "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification." MCL 777.37(3). The evidence that defendant directed the victim to remove her clothing and place her mouth on the stairs while naked so that the principal could penetrate her from behind qualifies as conduct that subjected the victim to humiliation, and was inflicted for the principal's gratification. See MCL 777.37(3). Therefore, the trial court properly assessed 50 points for OV 7.

---

[2] We acknowledge that in *People v Lockridge*, 498 Mich 358, 364-365; 870 NW2d 502 (2015), our Supreme Court held that Michigan's sentencing guidelines violate the Sixth Amendment "to the extent that OVs scored on the basis of facts not admitted by the defendant or necessarily found by the jury verdict increase the floor of the guidelines range, i.e. the defendant's 'mandatory minimum' sentence." In this case, however, defendant does not challenge the scoring of the guidelines on this basis. He argues only that the trial court erred in scoring the challenged OVs, whether using judge-found facts or not.

Next, defendant challenges the trial court's assessment of five points for OV 10, exploitation of a victim's vulnerability. A preponderance of the evidence supports the trial court's finding that a difference in size or strength between the victim and her two male attackers made her particularly vulnerable, and that defendant exploited that vulnerability to carry out the sexual assault and robbery. See MCL 777.40(1)(c) and (3)(b) and (c). Thus, the trial court properly scored OV 10.

## D. IDENTIFICATION TESTIMONY

Finally, defendant argues that the trial court erred in allowing the victim to identify him at trial. Defendant emphasizes that the record contains several different descriptions of him by the victim, and that the prosecutor subjected him to multiple suggestive identification procedures. Defendant asserts that the police officer who prepared the photographic lineup unfairly knew about the victim's description of defendant when he assembled the lineup. And at defendant's preliminary examination, the victim identified him on the basis of his presence in court wearing a jail uniform.

At trial, defense counsel stipulated to the victim's identification of defendant. By affirmatively approving the victim's identification of him at trial, counsel waived and thereby extinguished any claim of error related to the identification testimony. See *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). Even if the issue had not been waived, defendant would not be entitled to appellate relief. Because this issue was not raised below, any appellate review would be limited to plain error affecting defendant's substantial rights. See *id.* at 505; *People v King*, 297 Mich App 465, 472-473; 824 NW2d 258 (2012).

To challenge an in-court identification "on the basis of lack of due process, a defendant must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." *People v Williams*, 244 Mich App 533, 542; 624 NW2d 575 (2001) (internal quotation and citation omitted).

> [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. [*People v Kurylczyk*, 443 Mich 289, 306; 505 NW2d 528 (1993) (internal quotation and citation omitted).]

"If the trial court finds the procedure . . . impermissibly suggestive, evidence concerning the identification is inadmissible at trial unless an independent basis for in-court identification can be established" that qualifies as "untainted by the suggestive pretrial procedure." *Id*. (internal quotation and citation omitted).

The victim first identified defendant in a photographic lineup during the afternoon on June 25, 2013, less than 12 hours after defendant had assaulted her. The victim identified defendant's photograph as the "person who raped and hit" her, and denied that anyone had suggested which photograph she should select. The victim's trial testimony established that she

had an ample opportunity to observe defendant closely during his sexual and other assaults, that she saw him with the lights on at least briefly during the sexual assaults in a bedroom, and that the interior of the house was bright enough to see defendant on and near the stairs, where he struck her with an ax. There is no indication that the victim entertained any doubt about her identifications of defendant in the photographic lineup, at the preliminary examination, or at trial. See *Kurylczyk*, 443 Mich at 306.

We note that defendant offers no factual substantiation for his argument that the "Officer in charge . . . did the photo array and also met with the victim at the hospital to get a statement, [and] he knew the identification of [defendant]." See *Payne*, 285 Mich App at 195 (declining to consider a factually unsupported appellate argument). Defendant also raises no challenge to the photographs comprising the lineup. *Id*. (reciting that an "appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority") (internal citation and quotation omitted). Finally, defendant challenges the victim's in-court identification on the basis that he looked different at the time of his arrest in January 2014, than at the time of the assaults in June 2013. We detect nothing inconsistent in the victim's descriptions of defendant at the time of the offenses. Defendant's different appearance at the time of his arrest six months later does not affect the admissibility of the victim's three identifications of defendant. See *People v Davis*, 241 Mich App 697, 705; 617 NW2d 381 (2000) (explaining that even if a discrepancy exists between a witness's "initial description and defendant's actual appearance," the discrepancy only has relevance "to the weight of [the identification], not to its admissibility").

In sum, defendant has failed to establish any plain error arising from the victim's identifications. Furthermore, the victim's identification testimony did not affect defendant's substantial rights considering the defense theory at trial. Defendant gave a statement to the police claiming that he and the victim had consensual sex, and defendant continued to press this defense theory at trial. Identification simply was not an issue at trial.

Affirmed.


/s/ Michael J. Talbot
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly