PEOPLE v MULLEN

Docket No. 281202. Submitted March 4, 2008, at Detroit. Decided December 23, 2008, at 9:05 a.m.

James L. Mullen, charged in the Oakland Circuit Court with operating a motor vehicle while intoxicated, third offense, moved to suppress evidence of his blood alcohol content as determined in a blood test performed pursuant to a search warrant. The court, Mark A. Goldsmith, J., granted the motion, ruling that the arresting police officer's affidavit in support of the search warrant contained false information and omitted material information about the field sobriety tests administered to the defendant, and that the affidavit, as corrected for false or omitted information, did not establish probable cause for the issuance of a warrant. The prosecution appealed by delayed leave granted.

The Court of Appeals *held*:

1. The trial court did not clearly err when it determined that the arresting officer acted intentionally or with reckless disregard for the truth when he omitted from the affidavit the fact that the defendant had a piece of paper in his mouth less than 15 minutes before a preliminary breath test, in contravention of Mich Admin Code R 325.2655(2)(b), which requires that the mouth be free of foreign objects 15 minutes before a preliminary breath test. However, an affidavit supporting a warrant is presumed to be valid, and the defendant presented insufficient evidence at the suppression hearing that the presence of paper in his mouth would significantly call into question the accuracy of the preliminary breath test so as to preclude a finding of probable cause.

2. The trial court correctly determined that the arresting officer omitted certain facts related to the horizontal gaze nystagmus test, which he administered incorrectly and whose results he interpreted inaccurately.

3. The trial court did not clearly err in determining that the arresting officer's statement in the affidavit about the results of the "one-legged stand" test was false or misleading.

4. The trial court correctly struck the reference in the affidavit to the "finger to nose" test after determining that the defendant, as instructed, touched his nose rather than its tip.

5. The trial court did not clearly err by determining that the arresting officer falsely stated in the affidavit that the defendant exhibited slurred speech.

6. Disregarding the false statements in the affidavit and considering the facts that were omitted from the affidavit, there was sufficient information for a finding of probable cause to believe that a crime had been committed and that evidence of the crime would be found in the defendant's blood.

Reversed and remanded for further proceedings.

1. SEARCHES AND SEIZURES — SEARCH WARRANTS — AFFIDAVITS — PROBABLE CAUSE — APPEAL.

A reviewing court gives great deference to a magistrate's finding of probable cause to issue a search warrant; the reviewing court need only determine whether a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause; a substantial basis exists where there was a fair probability that contraband or evidence of the crime could be found in the particular place to be searched.

2. SEARCHES AND SEIZURES — SEARCH WARRANTS — AFFIDAVITS — PROBABLE CAUSE — PRESUMPTION OF VALIDITY OF AFFIDAVITS.

An affidavit in support of a search warrant is presumed to be valid; a defendant is entitled to a hearing to challenge the validity of a search warrant if the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause; the same rule applies to material omissions from affidavits.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *David G. Gorcyca*, Prosecuting Attorney, and *Joyce F. Todd*, Chief, Appellate Division, for the people.

*Kenneth D. Miller* for the defendant.

Before: METER, P.J., and SAWYER and WILDER, JJ.

WILDER, J. The prosecution appeals by delayed leave granted[1] the circuit court's order granting defendant's motion to suppress evidence of the results of his blood alcohol content (BAC) test. Defendant sought to suppress the evidence, contending that the search warrant affidavit included false information and that material information was omitted. Following an evidentiary hearing, the circuit court concluded that the arresting officer either intentionally or recklessly included false information in the search warrant affidavit, and that material information was omitted from the affidavit. After striking the false information and considering the omitted information, the circuit court further concluded that the affidavit, as corrected, did not establish probable cause to issue a search warrant, and granted the suppression motion.

We conclude that although the circuit court's factual determinations are not clearly erroneous, its determination that the affidavit, as corrected, did not establish probable cause to issue a search warrant, was erroneous. Therefore, we reverse the circuit court's order suppressing the BAC evidence.

I

At approximately 2:00 a.m. on November 9, 2006, Troy Police Officer Frank Shuler saw defendant's vehicle stop at a red light, pause for a few seconds, and then proceed past the red light. Officer Shuler made a traffic stop, and when he approached the driver's side window of the vehicle, he smelled alcohol and noticed that defendant's eyes were bloodshot and watery. Of-

---

[1] This Court granted leave to appeal limited to the issues raised in the application. *People v Mullen*, unpublished order of the Court of Appeals, entered November 30, 2007 (Docket No. 281202).

ficer Shuler testified[2] that the smell of alcohol was fairly strong and that he therefore asked defendant if he had consumed any alcohol that evening. Defendant indicated that he drank two glasses of wine with dinner.

Officer Shuler asked defendant to get out of the vehicle for field sobriety tests, and first asked defendant to count backward from 89 to 78. While defendant was able to do so, Officer Shuler averred in his affidavit to the magistrate that defendant's speech was slurred and that defendant swayed back and forth. Second, Officer Shuler conducted the "horizontal gaze nystagmus" test or HGN.[3] Officer Shuler asked defendant to stand with his arms at his sides, then held a pen in front of defendant's face at eye level, instructed defendant to hold his head still and to follow the pen with his eyes while Officer Shuler moved it side to side. Officer Shuler held the pen four to six inches from defendant's face, but despite the officer's directions, defendant repeatedly moved his head to follow the pen. Officer Shuler testified that defendant "had the lack of smooth pursuit [meaning that defendant's eyes allegedly jolted or staggered while defendant shifted his gaze to follow the pen] and maximum deviation at onset prior to forty-five." By describing "maximum deviation," Officer Shuler meant that defendant's eyes began to strain and "bounced" side to side within 45 degrees of center.

---

[2] With the exception of testimony to be identified, later, Officer Shuler provided essentially the same testimony at both the preliminary examination and the evidentiary hearing conducted by the trial court.

[3] HGN "is an involuntary jerking of the eye that occurs naturally as the eyes gaze to the side." HGN is "exaggerated and may occur at lesser angles" when a person is intoxicated. *Development of a Standardized Field Sobriety Test, Appendix A: Standardized Field Sobriety Testing,* available at <http://www.nhtsa.dot.gov/people/injury/alcohol/SFST/appendix_a.htm> (accessed February 5, 2008).

Third, Officer Shuler subjected defendant to the "one-legged stand" test. Before conducting this test, defendant notified the officer that he had a knee injury, so the officer instructed defendant to stand on his good leg. Officer Shuler testified that he demonstrated the test and instructed defendant to count until told to stop. Officer Shuler testified that defendant stopped counting before he was instructed to do so, and swayed while standing on one leg.[4]

Finally, Officer Shuler conducted the "finger to nose" test. He first demonstrated the test for defendant, and then instructed defendant to keep his feet together, put his arms out to his sides with his palms up, tilt his head back, and alternate touching the tip of his nose with his right and left index fingers. Officer Shuler testified that defendant was unable to touch the actual tip of his nose, touching the bridge instead, and that defendant also swayed back and forth during the test. Officer Shuler noted that defendant's speech was "a little slurred" throughout the entire interaction.

Officer Shuler then conducted a preliminary breath test (PBT). Officer Shuler testified at the preliminary examination that he checked defendant's mouth before placing him in the backseat of the patrol car, waited 15 minutes, and then administered the test. He also specifically testified that he could not recall whether defendant had paper in his mouth before administering the test. At the evidentiary hearing, Officer Shuler testified that defendant was chewing gum when he was stopped, that he asked defendant to spit the gum out, and that he believed defendant complied. Officer Shuler further testified that he checked defendant's mouth and found it to be empty, but he subsequently admitted

---

[4] However, the fact that defendant swayed during the one-legged stand test was not disclosed by Officer Shuler on the affidavit.

that, when he began to read defendant his PBT rights, he noticed that defendant had a little piece of paper in his mouth. Officer Shuler explained that he did not believe that the paper would compromise the PBT results, and therefore waited only a few minutes after noticing the paper before administering the test. Defendant's PBT result was 0.15.

Officer Shuler placed defendant under arrest and transported him to the police station. After conducting a LEIN[5] search, the officer discovered that defendant had one or two prior arrests for driving under the influence of liquor. He read defendant his chemical test rights and asked for a blood sample. Defendant initially consented, but then refused. Officer Shuler then proceeded to secure a search warrant. He filled out a standardized form affidavit to secure the warrant. On the form, Officer Shuler circled the entry indicating that he was investigating a case of operating a motor vehicle while under the influence of liquor. Among several choices provided on the form, Officer Shuler selected one stating that there was a strong odor of alcohol emanating from defendant's breath and person. He also selected one indicating that defendant had slurred speech and watery eyes. The officer reported that defendant had a PBT result of 0.15. Officer Shuler noted that he observed defendant stop at a red light and then proceed on red. He indicated that defendant "conducted field sobriety test poorly . . . stopped counting before he was told to stop on the one leg stand . . . Nystagmus was present . . . [and defendant] was unable to touch his right & left tip of his index fingers to the tip of his nose." Officer Shuler did not disclose in his affidavit that the defendant had paper in his mouth less than 15 minutes before he conducted the PBT.

---

[5] "LEIN" stands for the Law Enforcement Information Network.

Relying on the affidavit, the magistrate issued a search warrant for a blood sample. The blood test revealed that defendant had a blood alcohol content of 0.11 grams of alcohol per 100 milliliters of blood. Defendant was charged, as a third offender, with operating a motor vehicle while intoxicated, in violation of MCL 257.625(1).

II

Before concluding its evidentiary hearing, the circuit court viewed the videotape of the traffic stop. Following the hearing, the circuit court ruled that Officer Shuler had recklessly omitted information that defendant had paper in his mouth less than 15 minutes before the administration of the PBT, recklessly stated in the affidavit only that nystagmus was present without informing the magistrate that he had administered the HGN test in a non-standardized way and explaining the manner in which the test was administered, intentionally or recklessly misrepresented that defendant's speech was slurred (a conclusion that the circuit court reached after viewing a videotape), intentionally or recklessly misrepresented that defendant stopped counting at an inappropriate time during the one-legged stand test, and intentionally or recklessly misrepresented that defendant was unable to touch the tip of his nose with his index fingers. The circuit court concluded that given the remaining information in the affidavit indicating that a strong odor of intoxicants emanated from defendant and that defendant had watery eyes, there was insufficient evidence to support a finding of probable cause to issue the search warrant, and the BAC evidence should be suppressed.

III

We review de novo a trial court's ultimate determination on a motion to suppress, *People v McBride (On Remand)*, 273 Mich App 238, 249; 729 NW2d 551 (2006), rev'd in part on other grounds 480 Mich 1047 (2008), and its factual findings for clear error, *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005). We review de novo underlying issues of law such as statutory questions or the application of a constitutional standard to uncontested facts. *People v Keller*, 479 Mich 467, 473-474; 739 NW2d 505 (2007).

IV

We begin with the constitutional text. The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and *no Warrants shall issue, but upon probable cause,* supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. [US Const, Am IV (emphasis added).]

Whether a search is reasonable is a fact-intensive determination and must be measured by examining the totality of the circumstances. *Williams, supra* at 314. A reviewing court must give great deference to a magistrate's finding of probable cause to issue a search warrant. Accordingly, we do not review de novo the lower court's determination regarding the sufficiency of a search warrant affidavit. *Keller, supra* at 474, 476-477. Rather, "this Court need only ask whether a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause." *People v Martin*, 271 Mich App 280, 297; 721

NW2d 815 (2006) (quotation marks and citation omitted). To find a substantial basis, we must "ensure that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Martin, supra* at 297 (quotation marks and citation omitted).

V

The prosecutor contends that the circuit court clearly erred by determining that Officer Shuler intentionally or recklessly misrepresented material facts and omitted material facts from the affidavit. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006).

The United States Supreme Court has found that false statements must be stricken from a search warrant affidavit:

> [W]here the defendant makes a substantial preliminary showing that a *false statement knowingly and intentionally, or with reckless disregard for the truth*, was included by the affiant in the warrant affidavit, *and if the allegedly false statement is necessary to the finding of probable cause*, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, *with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded* to the same extent as if probable cause was lacking on the face of the affidavit. [*Franks v Delaware*, 438 US 154, 155-156; 98 S Ct 2674; 57 L Ed 2d 667 (1978) (emphasis added).]

See also *People v Stumpf*, 196 Mich App 218, 224; 492 NW2d 795 (1992).

The trial court determined that Officer Shuler, either intentionally or with reckless disregard for the truth, omitted material information regarding defendant's PBT result. In his affidavit, Officer Shuler indicated that defendant's PBT results were 0.15, but he omitted that defendant had a piece of paper in his mouth several minutes before administering the test. A PBT should be administered only after the defendant's mouth has been clear of foreign substances for 15 minutes. Mich Admin Code R 325.2655(2)(b). The purpose of the rule is to ensure accuracy of test results. See *People v Wujkowski*, 230 Mich App 181, 187; 583 NW2d 257 (1998); *People v Rexford*, 228 Mich App 371, 378; 579 NW2d 111 (1998). Having reviewed the record, we conclude that the circuit court did not clearly err when it determined that Shuler acted intentionally or with reckless disregard for the truth when he omitted this information about the PBT.

But the fact that Shuler intentionally or recklessly omitted relevant information does not, by itself, invalidate the warrant. In Michigan, there is a presumption that an affidavit supporting a search warrant is valid. *Martin, supra. Martin* states:

A defendant is entitled to a hearing to challenge the validity of a search warrant if he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause . . . ." *Franks, supra* at 155-156; see also *Stumpf, supra* at 224. However, there is a presumption that the affidavit supporting the search warrant is valid. *Franks, supra* at 171. In order to warrant a hearing, the challenge "must be more than conclusory and must be

> supported by more than a mere desire to cross-examine."
> *Id.* The rule from *Franks* is also applicable to material
> omissions from affidavits. *Stumpf, supra* at 224. [*Martin,
> supra* at 311.]

Thus, according to *Stumpf*, only when there have been
*material* omissions *necessary to the finding of probable
cause* may the resulting search warrant be invalidated.
We conclude on the basis of this record that the omis-
sion by Shuler (the fact that defendant had paper in his
mouth less than 15 minutes before the PBT was con-
ducted) was not material, because defendant presented
insufficient evidence in the hearing below that the
presence of paper in his mouth, three minutes before
administration of the PBT, would significantly call into
question the accuracy of the PBT result so as to
preclude a finding of probable cause.

If, for example, Shuler had disclosed on the affidavit
the fact that paper was in defendant's mouth approxi-
mately three minutes before he was administered the
PBT, the magistrate would have been able to determine
what weight to give the PBT result and would not have
been required to exclude consideration of the PBT
evidence.[6] In this situation, the magistrate's discretion
to consider the PBT evidence was broad because only a

---

[6] In analogous situations, the failure strictly to observe the adminis-
trative rule requirements for administration of a PBT (such as the 15
minute observation period) has not led to exclusion of the evidence. In
*Wujkowski, supra*, the operator continually observed the defendant from
5:05 a.m. until 5:23 a.m. except for the few seconds it took the officer to
walk over and check the datamaster to determine if the fifteen minutes
had elapsed. *Id.* at 186. This Court held "that the momentary time that
the officer did not observe defendant was so minimal that the test results
cannot be assumed to be inaccurate," noting that "there was no allega-
tion that defendant placed anything in his mouth or regurgitated. Under
these circumstances, the Circuit Court erred in ruling that the violation
of the administrative rule required suppression of the results of the
Breathalyzer test." *Id.* at 186.

probable cause finding was required, not proof beyond a reasonable doubt. *People v Yost*, 468 Mich 122, 126; 659 NW2d 604 (2003). As the Supreme Court noted in *Yost*: "[T]o find probable cause, a magistrate need not be without doubts regarding guilt. The reason is that the gap between probable cause and guilt beyond a reasonable doubt is broad ... and finding guilt beyond a reasonable doubt is the province of the jury." *Id.*

The circuit court also did not clearly err when it determined that Officer Shuler omitted certain facts related to the HGN test, either intentionally or with reckless disregard for the truth. While the standard distance for holding the stimulus when conducting the HGN test is 12 to 15 inches from the suspect's face, Officer Shuler could not recall the proper distance that he learned in training and held the pen only four to six inches from defendant's face. When conducting an HGN test, the officer looks for three factors: (1) "the eye cannot follow a moving object smoothly"; (2) "jerking is distinct when the eye is at a maximum deviation"; and (3) "the angle of onset of jerking is within 45 degrees of center." See *Development of a Standardized Field Sobriety Test, Appendix A: Standardized Field Sobriety Testing*, available at <http://www.nhtsa.dot.gov/people/injury/alcohol/SFST/ appendix_a.htm> (accessed February 5, 2008).

Although Officer Shuler testified that he knew and understood these factors, he generically stated in the affidavit that "nystagmus is present" without revealing that he had the stimulus too close to defendant's eyes. Because nystagmus occurs naturally and is always present, the fact that the test had not been performed accurately was a significant omission in the warrant affidavit reviewed by the magistrate. We agree with the circuit court that Officer Shuler's incorrect administra-

tion of the HGN test led to an inaccurate interpretation of the results, and that Officer Shuler acted with at least reckless disregard for the truth when including the misleading statement about the HGN test results in the affidavit.

We also conclude that the circuit court did not clearly err in determining that Officer Shuler's affidavit statement about the results of the one-legged stand test was false or misleading. Upon review of the patrol car video, the circuit court concluded that while defendant appeared to pause once while counting, he did not stop counting as averred by Officer Shuler. Moreover, Officer Shuler omitted from the affidavit the fact that defendant was swaying slightly during the test, despite the fact that swaying is a standardized factor. The circuit court also did not err by striking the reference to the "finger to nose" test from the affidavit, because the record supports the circuit court's finding that Officer Shuler instructed defendant to touch his nose, rather than the tip of his nose, and that defendant performed the test as he was instructed to do.

Finally, we conclude that the circuit court did not clearly err by determining that Officer Shuler falsely stated that defendant exhibited slurred speech. While the video reveals that defendant did speak slowly, we agree with the circuit court that there is no sign of slurred speech. Accordingly, the circuit court properly struck this statement from the affidavit.

VI

The circuit court determined that after striking the inaccurate facts in the affidavit and considering the omitted material facts, there was insufficient evidence to support the magistrate's finding of probable cause. We disagree.

Absent the stricken statements, and after adding the material information that was improperly omitted, the affidavit would have asserted that Officer Shuler detected the "strong" odor of alcohol and noticed that defendant had "watery eyes," that defendant drove his vehicle through a red light at 2:00 a.m., and that while defendant had paper in his mouth three minutes before the test was administered, defendant's PBT result was 0.15.

"Probable cause does not require certainty. Rather, it requires only a probability or substantial chance of criminal activity." *People v Champion*, 452 Mich 92, 111 n 11; 549 NW2d 849 (1996), citing *Illinois v Gates*, 462 US 213, 243-244 n 13; 103 S Ct 2317; 76 L Ed 2d 527 (1983).

> Probable cause to search exists when facts and circumstances warrant a reasonably prudent person to believe that a crime has been committed and that the evidence sought will be found in a stated place. Whether probable cause exists depends on the information known to the officers at the time of the search. [*People v Brzezinski*, 243 Mich App 431, 433; 622 NW2d 528 (2000).]

The remaining information in the search warrant affidavit, after the improperly omitted information is added and the improper information is disregarded, is sufficient to form probable cause to issue a search warrant for defendant's blood. When reviewing a search warrant affidavit, we must read it in a "common sense and realistic manner," *People v Whitfield*, 461 Mich 441, 444; 607 NW2d 61 (2000) (quotation marks and citation omitted), not a crabbed or hypertechnical manner. Defendant was stopped for a traffic violation in the middle of the night and exhibited a strong smell of alcohol. On the basis of that evidence, Shuler subjected defendant to field sobriety tests. Although the officer

failed to correctly administer some of the tests, the evidence presented below did not establish that the 0.15 PBT test result was significantly unreliable as to preclude the reasonable belief by a police officer or a magistrate that defendant's blood might contain evidence of intoxication. Given the absence of any basis to significantly call into question the 0.15 PBT result, and given the other circumstantial evidence that defendant was intoxicated, we find that the circuit court erred by determining that a reasonable magistrate would not have found probable cause to issue a search warrant.

Reversed and remanded to the circuit court for further proceedings consistent with this opinion. We do not retain jurisdiction.