# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

BRETT CORAN GODFREY,

       Defendant-Appellant.

UNPUBLISHED
June 22, 2017

No. 332599
Saginaw Circuit Court
LC No. 15-041125-FH

Before: TALBOT, C.J., and BECKERING and M. J. KELLY, JJ.

PER CURIAM.

Following a jury trial, defendant, Brett Godfrey, was convicted of first-degree home invasion, MCL 750.110a(2), and conspiracy to commit first-degree home invasion, MCL 750.110a(2); MCL 750.157a. Godfrey was sentenced as a fourth-offense habitual offender, MCL 769.12, to prison terms of 72 months to 40 years for each conviction, to be served concurrently. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

On March 1, 2015, Godfrey and co-defendant, Nicholas Cross, entered Douglas Kendall's residence around 2:00 a.m.[1] Kendall was asleep in his basement bedroom when he was awakened by his cell phone ringing. Several minutes later, he heard the basement door on the other end of the house close. Kendall then saw Cross peeking into his bedroom before entering the room and repeatedly ordering Kendall to get up, get dressed, and follow him. Kendall testified that Cross indicated that he wanted to talk to him about allegations that he had molested Cross's children. Kendall noticed that Cross kept glancing toward the door. When Kendall looked over, he saw Godfrey standing there. Kendall refused to go with Cross. He stated that Cross then pulled a gun and threatened to shoot him. He testified that he grabbed the gun and insisted that he was not going anywhere with Cross. He added that he felt scared with Godfrey and Cross in his bedroom. Kendall stated that during the incident, Godfrey did not have a gun, did not move, and did not say anything.

---

[1] Cross is Godfrey's brother. Kendall testified that he had known both Godfrey and Cross his entire life.

Kendall testified that he pushed past Godfrey and ran upstairs to get his father, who was already awake because of the noise. Kendall told his father that Cross and Godfrey were in the basement and had a gun. On hearing that the intruders had a gun, Kendall's father's other son handed him a gun, and Kendall's father ordered Cross and Godfrey to leave his house.[2] When Cross started coming up the basement stairs, Kendall's father again ordered him and Godfrey to leave. Although he was unable to identify Godfrey as one of the intruders, Kendall's father believed that the individual with Cross stated that there was no gun.

## II. DOUBLE JEOPARDY

### A. STANDARD OF REVIEW

Godfrey's first trial ended in a mistrial after the prosecutor introduced evidence of a 911 call where Kendall stated that Godfrey was on parole or probation at the time of the offense. The prosecutor had agreed to redact the references to Godfrey's parole or probation status, but it appears that the portions of the tape played for the jury nevertheless included the reference to his status. Godfrey moved for a mistrial, which the court granted. The next day, Godfrey argued that because the prosecutor intentionally goaded him into moving for a mistrial, he was protected from retrial by the double jeopardy clause. The trial court, however, found that the prosecutor's conduct was unintentional, so it denied the motion to dismiss with prejudice on double jeopardy grounds. Godfrey argues on appeal that the trial court erred and that he is protected from retrial by the double jeopardy clause of the state and federal constitutions.

"A double jeopardy challenge presents a question of constitutional law reviewed de novo on appeal." *People v Ackah-Essien*, 311 Mich App 13, 30; 874 NW2d 172 (2015). However, to the extent that Godfrey's double jeopardy claim is based on a determination regarding "whether the prosecutor intended to goad the defendant into moving for a mistrial," we review such findings under the clearly erroneous standard. *People v Dawson*, 431 Mich 234, 258; 427 NW2d 886 (1988). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made. *People v Mullen*, 282 Mich App 14, 22; 762 NW2d 170 (2008).

### B. ANALYSIS

Both the United States and the Michigan Constitutions protect a defendant from being twice placed in jeopardy for the same offense. *People v Herron*, 464 Mich 593, 599; 628 NW2d 528 (2001). Retrial following a mistrial is "permissible under double jeopardy principles where manifest necessity required the mistrial or the defendant consented to the mistrial and the mistrial was caused by innocent conduct on the part of the prosecutor or judge, or by factors beyond their control." *People v Echavarria*, 233 Mich App 356, 363; 592 NW2d 737 (1999). Manifest necessity "appears to refer to the existence of sufficiently compelling circumstances that would otherwise deprive the defendant of a fair trial or make its completion impossible." *People v*

---

[2] Kendall's father was unable to identify Godfrey as one of the intruders.

*Rutherford*, 208 Mich App 198, 202; 526 NW2d 620 (1994). Also, "[t]he balance tilts [against retrial], where the judge finds, on the basis of the 'objective facts and circumstances of the particular case,' that the prosecutor intended to goad the defendant into moving for a mistrial." *Dawson*, 431 Mich at 257.

The trial court found that the prosecutor's conduct was not intentional. The parties agreed to redact the portions of the 911 tape that referred to Godfrey's probation or parole status. The record also reflects that Godfrey's lawyer specifically detailed the portions of the recording he was objecting to and identified when the recording had to be stopped. The prosecutor noted that there were time differences between his DVD or tape player and the player used by Godfrey's lawyer. He indicated that, because of the time differences, they needed to review the record together. After the challenged portions of the 911 call were played for the jury, the prosecutor explained that he had been prepared to pause the recording at a given time but that the time he had written down did not match the time on the player. Under these circumstances, the trial court's finding that the prosecutor's conduct was unintentional is not clearly erroneous. At most, the prosecutor's failure to identify the exact time to stop the recording was negligent, and "[w]here a mistrial results from apparently innocent or even negligent prosecutorial error, or from factors beyond his control, the public interest in allowing a retrial outweighs the double jeopardy bar." *Dawson*, 431 Mich at 257. Godfrey was, therefore, not retried in violation of the double jeopardy clause.

## III. SUFFICIENCY OF EVIDENCE

### A. STANDARD OF REVIEW

Godfrey next argues that there was insufficient evidence to convict him of first-degree home invasion and conspiracy to commit first-degree home invasion. Challenges to the sufficiency of evidence are reviewed de novo. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). When reviewing the sufficiency of evidence, the reviewing court considers "the evidence in the light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).

### B. ANALYSIS

The elements of first-degree home invasion are: (1) the defendant broke and entered a dwelling or entered the dwelling without permission; (2) when the defendant did so, he intended to commit a felony, larceny, or assault, or he actually committed a felony, larceny, or assault while entering, being present in, or exiting the dwelling; and (3) another person was lawfully present in the dwelling or the defendant was armed with a dangerous weapon. MCL 750.110a(2); *People v Wilder*, 485 Mich 35, 42-43; 780 NW2d 265 (2010).

In this case, the record reflects that Cross entered the Kendall residence at 2:00 a.m. to confront Kendall about the alleged molestation of Cross's children. Godfrey, Cross's brother, accompanied him. Neither Godfrey nor Cross had permission to be in the residence and other people were lawfully present at that time. According to Kendall's testimony, Cross entered his bedroom and insisted that he go somewhere with him to talk about allegations that Kendall had

molested Cross's children. When he did so, he kept glancing toward the bedroom door. When Kendall looked, he saw Godfrey standing in the doorway. Further, when Cross pulled his gun, Godfrey did not do anything to stop Cross, which allows for an inference that he was aware that Cross had a gun and was supportive of the confrontation between Cross and Kendall. Moreover, it is reasonable to infer that Godfrey's actions supporting Cross placed Kendall in a reasonable apprehension of receiving an immediate battery or at least increased that apprehension. See *People v Henry (After Remand)*, 305 Mich App 127, 143; 854 NW2d 114 (2014) (holding that an assault "requires proof that the defendant made either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery"). Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to convict Godfrey of first-degree home invasion.

Additionally, Godfrey argues that Kendall and his father were not credible witnesses because their combined testimony failed to place him at the scene or show that he actively participated in the crime. However, although Kendall's father could not positively identify Godfrey as the individual that accompanied Cross, he was sure that a second man was there. And Kendall's testimony placed Godfrey at the scene because he positively identified Godfrey as the individual with Cross. Moreover, Godfrey's girlfriend testified that she drove Godfrey and Cross to the Kendall residence, which lends credibility to Kendall's identification testimony. Furthermore, during his interview with the police, Godfrey stated that he went into the Kendall residence when he heard yelling from inside the house. The jury heard all the evidence and was "free to believe or disbelieve, in whole or in part, any of the evidence presented at trial." *People v Unger*, 278 Mich App 210, 228; 749 NW2d 272 (2008) (citation and quotation marks omitted). We will not interfere with that determination on appeal. *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013).

There was also sufficient evidence to allow a rational jury to convict Godfrey of conspiracy to commit first-degree home invasion. "Establishing a conspiracy requires evidence of specific intent to combine with others to accomplish an illegal objective." *People v Blume*, 443 Mich 476, 481; 505 NW2d 843 (1993). "[D]irect proof of the conspiracy is not essential; instead, proof may be derived from the circumstances, acts, and conduct of the parties." *People v Justice (After Remand)*, 454 Mich 334, 347; 562 NW2d 652 (1997). In this case, Godfrey and Cross entered the Kendall residence, and, although Godfrey claimed that he merely entered the residence when he heard arguing, there was evidence that Cross intended to confront Kendall about the allegations of sexual abuse and circumstantial evidence that he did so with Godfrey's tacit approval. Apparently, the plan was to take Kendall to an unknown destination to talk. When Kendall refused to comply with the order, Cross pointed a gun at his face and threatened to shoot him. Godfrey saw Cross order Kendall to get dressed and go with him, and he saw Cross's use of a gun; however, he did nothing to intervene. Instead, Kendall had to push past Godfrey in order to go upstairs. Moreover, Cross's implication that he was going to take Kendall somewhere suggested Godfrey's involvement because Cross arrived with Godfrey and presumably planned to leave with Godfrey and Kendall. Finally, at the time of the incident, Kendall weighed about 280 pounds while Cross weighed 160 to 180 pounds; therefore, it was reasonable to assume that Godfrey accompanied Cross as a backup in the event that Kendall put up a fight. Viewed in the light most favorable to the prosecution, this evidence was sufficient to support Godfrey's conviction of conspiracy to commit first-degree home invasion.

## IV. MOTION TO QUASH THE INFORMATION

Godfrey also contends that it was error for the trial court to deny his motion to quash his bindover. We review for an abuse of discretion a trial court's decision on a motion to quash the information. *People v Fletcher*, 260 Mich App 531, 551-552; 679 NW2d 127 (2004). However, "[i]f a defendant is fairly convicted at trial, no appeal lies regarding whether the evidence at the preliminary examination was sufficient to warrant a bindover." *People v Wilson*, 469 Mich 1018 (2004).[3] Here, Godfrey's argument fails because sufficient evidence at trial supported his convictions, and there is no indication that he was otherwise prejudiced by the claimed error. *People v Hall*, 435 Mich 599, 601-603; 460 NW2d 520 (1990).

## V. JUROR MISCONDUCT

### A. STANDARD OF REVIEW

Godfrey also argues that the trial court erred in failing to excuse a juror who knew and had worked with Kendall. This Court reviews a trial court's decision whether to remove a juror for an abuse of discretion. *Mahone*, 294 Mich App at 215. The trial court's factual findings regarding juror misconduct are reviewed for clear error. *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008). Clear error occurs when the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id*.

### B. ANALYSIS

A criminal defendant has a constitutional right to an impartial jury. US Const, Am VI; Const 1963, art 1, § 20; *Miller*, 482 Mich at 547. Jurors are presumed to be impartial. *Miller*, 482 Mich at 550. The defendant bears the burden of establishing "that the juror was not impartial or at least that the juror's impartiality was in reasonable doubt." *Id*. "A juror's failure to disclose information that the juror should have disclosed is only prejudicial if it denied the defendant an impartial jury." *Id*. at 548. "The misconduct must be such as to reasonably indicate that a fair and impartial trial was not had. . . ." *Id*. at 549 (citation and quotation marks omitted).

Godfrey's only complaint about the challenged juror was that she had known Kendall four years earlier when they worked together at a Burger King. However, Godfrey has offered no evidence that the challenged juror was partial or that he was prejudiced by her presence on his jury. The juror testified that she had worked with Kendall for approximately six months, that she had not seen him for the four years preceding trial, that she did not have a relationship with him outside of work, and that her previous contact with him would not affect her ability to fairly decide the case. There is no indication that this juror was compromised, that the other jurors

---

[3] Orders from our Supreme Court are binding if they are a final disposition of an application containing a concise statement of the applicable facts and the reason for the decision. See *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 369; 817 NW2d 504 (2012).

were exposed to any improper influence, or that their ability to make a fair and impartial decision was compromised by this juror. See *Miller*, 482 Mich at 553-554. Therefore, the trial court did not err when it refused to excuse the challenged juror.

Affirmed.

/s/ Michael J. Talbot
/s/ Jane M. Beckering
/s/ Michael J. Kelly