*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL ROBERT AVERY,

        Defendant-Appellant.

UNPUBLISHED
April 30, 2020

No. 344570
Genesee Circuit Court
LC No. 15-038725-FH

Before: BORRELLO, P.J., and O'BRIEN and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84; two counts of felonious assault, MCL 750.82; felon in possession of a firearm (felon-in-possession), MCL 750.224f; possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b; possession of less than 25 grams of heroin, MCL 333.7403(2)(a)(*v*); possession of less than 25 grams of cocaine, MCL 333.7403(2)(a)(*v*); and carrying a concealed weapon (CCW), MCL 750.227. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Defendant's convictions stem from the November 2015 assault of Marissa Ayliffe. On the evening of November 20, 2015, defendant, Ayliffe, and defendant's cousin, Venus Nelson, went to a bar in Flint. At some point during the evening, defendant became angry with Ayliffe and started yelling at her. Defendant then bit Ayliffe on her cheek. The trio left the Luxe Lounge sometime after midnight.

According to Ayliffe, beginning in the parking lot of the Luxe Lounge and continuing after the group got into defendant's car, defendant repeatedly assaulted her by punching her in the face, kicking her, pulling her hair, and biting her all over her body. Defendant also used a box cutter to cut open her pants and jacket, and cutting her leg and arm. Throughout this period, defendant would not let Ayliffe out of the vehicle, he threatened to kill her, and he told her that he would take her daughter if she told anyone about the assault. At one point, defendant stopped the vehicle,

-1-

pulled out a firearm, put it by the side of Ayliffe's head, and then fired it out the driver's side window.

Defendant began driving again, continuing toward Fenton. Two tires on the vehicle subsequently deflated, and defendant stopped at a gas station. While Nelson went inside to get help for the tires, defendant continued his assault of Ayliffe. Ayliffe managed to escape from the vehicle, and she ran into the gas station. The gas station clerk called the police. Fenton police officers subsequently stopped defendant's vehicle and apprehended defendant and Nelson not far from the gas station. At the scene, the officers saw blood, clumps of hair, and a box cutter inside the vehicle, but they did not see drugs or a firearm.

After the case was transferred to the Flint Township Police because the assault began in that jurisdiction, the vehicle was searched pursuant to a search warrant. This search resulted in the recovery of a .32-caliber shell casing, baggies filled with cocaine and heroin, and a box cutter. Approximately a week after the assault, a civilian recovered a .32-caliber semiautomatic pistol in the vicinity of where defendant and Nelson had been apprehended, and this firearm was turned over to the police. No usable fingerprints were recovered from the firearm and DNA testing did not link defendant to the firearm, but a firearms expert determined that the .32-caliber shell casing found in defendant's vehicle was fired from that weapon.

The jury convicted defendant as previously noted. Defendant now appeals.

## II. DASHCAM VIDEOS

Defendant first argues that his right to due process was violated by the prosecution's failure to produce at trial the dashcam videos from the vehicles of the police officers who apprehended him, Fenton Police Officers Julie Bemus and Adam Lape. Defendant also argues that the trial court erred by denying his request for an instruction informing the jury that it could draw an adverse inference against the prosecution because of its failure to produce the dashcam videos.

## A. STANDARD OF REVIEW

A defendant's claim that his due-process rights have been violated is reviewed de novo by this Court. *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016). "Claims of instructional error are generally reviewed de novo by this Court, but the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). An abuse of discretion "occurs when the trial court renders a decision falling outside the range of principled decisions." *Dimambro*, 318 Mich App at 212 (quotation marks and citation omitted).

## B. ANALYSIS

Defendant initially focuses his argument on the application of *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963), in which the United States Supreme Court announced:

> We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material

either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

In *Strickler v Greene*, 527 US 263, 280-281; 119 S Ct 1936; 144 L Ed 2d 286 (1999), the United States Supreme Court explained how the *Brady* rule had been since been refined:

We have since held that the duty to disclose such evidence is applicable even though there has been no request by the accused, and that the duty encompasses impeachment evidence as well as exculpatory evidence. Such evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Moreover, the rule encompasses evidence "known only to police investigators and not to the prosecutor." In order to comply with *Brady*, therefore, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police."

These cases, together with earlier cases condemning the knowing use of perjured testimony, illustrate the special role played by the American prosecutor in the search for truth in criminal trials. [Citations omitted.]

The *Strickler* Court further explained that "[t]here are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Id*. at 281-282. In *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014), our Supreme Court held that the controlling test in Michigan for establishing a *Brady* violation "is that articulated by the Supreme Court in *Strickler*, no less and no more: (1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is material."

In this case, however, it is not disputed that the prosecution was not in possession of any dashcam video and that any dashcam video of the traffic stop that had been recorded at the time was no longer in existence. The dashcam footage had apparently been deleted from the police department's system, either automatically within 30 days of the traffic stop based on how the traffic stop had been categorized in the system or during the course of the police department's transition from an analog system to a high-definition system.

Under these circumstances, defendant's argument that the failure to actually produce the dashcam video footage violated his due-process rights is not strictly a *Brady* issue but instead falls under the broader general umbrella of what the United States Supreme Court has stated "might loosely be called the area of constitutionally guaranteed access to evidence." *Arizona v Youngblood*, 488 US 51, 55; 109 S Ct 333; 102 L Ed 2d 281 (1988).

In *Youngblood*, the United States Supreme Court confronted the same issue that is before us in this case, i.e. "the extent to which the Due Process Clause of the Fourteenth Amendment requires the State to preserve evidentiary material that might be useful to a criminal defendant." *Id*. at 52. The Supreme Court in *Youngblood* concluded that the failure by the police to refrigerate clothing and perform tests on semen samples that had been obtained on the night of the sexual

assault at issue did not violate the defendant's due-process rights because this information had not been concealed from the defendant, the evidence as it existed was made available to the defendant, and there was no evidence of bad faith on the part of the police. *Id*. at 58. The *Youngblood* Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id*. In reaching this holding, the Court reasoned as follows:

> The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady*, makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. Part of the reason for the difference in treatment is found in the observation . . . that "[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." Part of it stems from our unwillingness to read the "fundamental fairness" requirement of the Due Process Clause as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution. We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, *i.e.*, those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. [*Id*. at 57-58 (citations omitted; alteration in original).]

It is defendant's burden to show that the police acted in bad faith. *People v Dickinson*, 321 Mich App 1, 16; 909 NW2d 24 (2017).

In this case, defendant has failed to demonstrate that the failure to preserve the dashcam video was the result of bad faith by the police. Defendant argues that the police acted in bad faith because the dashcam video, instead of being categorized as a felony arrest that would have been saved indefinitely, may have been erroneously categorized in the system as something else, which would have led to its automatic destruction after 30 days. Defendant also generally alleges that there was a lack of training and reckless indifference among police officers regarding how to handle dashcam videos. However, even accepting defendant's contentions as true, they may demonstrate negligence at worst but the evidence does not support a conclusion that there was bad faith on the part of the police. Consequently, defendant has not shown that his due-process rights were violated by the failure to preserve the dashcam video. *Youngblood*, 488 US at 57-58.

Moreover, even if we were to consider defendant's argument under the *Brady* test, defendant has not demonstrated the requisite prejudice. Defendant seemingly argues that the video was favorable for purposes of showing whether a firearm was thrown out of the vehicle and evaluating the accuracy of the testimony concerning where the firearm was subsequently located by a civilian. However, Bemus testified that she reviewed the dashcam video shortly after the date of the arrest and did not see any weapon being thrown from the vehicle in which defendant was

traveling. Thus, defendant was able to elicit evidence about what the video showed that was helpful to his defense. Defendant has not shown that a reasonable probability exists that the result of his trial would have been different had the video been shown at trial. *Strickler*, 527 US at 280.

Defendant, citing *People v Davis*, 199 Mich App 502, 514-515; 503 NW2d 457 (1993), overruled on other grounds by *People v Grissom*, 492 Mich 296, 319-320; 821 NW2d 50 (2012), additionally argues that the trial court abused its discretion by denying his request for an instruction that the jury could infer that the dashcam evidence would have been favorable to defendant since the prosecution failed to make reasonable efforts to preserve the dashcam video and did not produce the video at trial. However, a trial court does not abuse its discretion by declining to give such an instruction if the defendant fails to show that the evidence was not produced as a result of bad faith attributable to the state. *Davis*, 199 Mich App at 515. Here, because defendant did not demonstrate that the police acted in bad faith, the trial court did not abuse its discretion by denying defendant's request for an adverse inference instruction. *Id*.

## III. MOTION TO SUPPRESS

Defendant next argues that the trial court erred by denying his pretrial motion to suppress the evidence recovered from his vehicle during a search that was conducted at the Flint Township Police station pursuant to a search warrant. The evidence recovered during this search included a box cutter, a .32-caliber shell casing, and baggies containing heroin and cocaine. Defendant argues that the affidavit submitted in support of the warrant omitted material information by failing to mention the plain-view search that had already been conducted by the Fenton Police officers at the scene of the arrest, which had not revealed a shell casing or the existence of controlled substances. Defendant further argues that this omission misled the magistrate and that the affidavit would not have sufficiently established probable cause had the missing information been included, thus rendering the warrant invalid and requiring suppression of the fruits of the second search. The trial court denied defendant's motion, reasoning that the search warrant affidavit would still have provided sufficient probable cause even if the omitted information had been included.

### A. STANDARD OF REVIEW

"We review de novo a trial court's ultimate decision on a motion to suppress on the basis of an alleged constitutional violation." *People v Mahdi*, 317 Mich App 446, 457; 894 NW2d 732 (2016) (quotation marks and citation omitted). Any underlying factual findings made during the suppression hearing are reviewed for clear error. *Id*. This Court reviews de novo "underlying issues of law such as statutory questions or the application of a constitutional standard to uncontested facts." *People v Mullen*, 282 Mich App 14, 21; 762 NW2d 170 (2008).

### B. ANALYSIS

The Fourth Amendment of the United States Constitution provides in pertinent part that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." US Const, Am IV. The Michigan Constitution also contains a warrant provision stating that "[n]o warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation." Const 1963, art 1, § 11.

In *Franks v Delaware*, 438 US 154, 155-156; 98 S Ct 2674; 57 L Ed 2d 667 (1978), the United States Supreme Court held that

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

The holding in *Franks* was not abrogated by the United States Supreme Court's subsequent recognition in *United States v Leon*, 468 US 897, 922-924; 104 S Ct 3405; 82 L Ed 2d 677 (1984) of a "good-faith" exception to the Fourth Amendment exclusionary rule for searches conducted pursuant to objectively reasonable reliance on a warrant; suppression is still an "appropriate remedy" if the affiant misled the magistrate or judge issuing the warrant by including information in the affidavit that the affiant "knew was false or would have known was false except for his reckless disregard of the truth" because such an affiant cannot demonstrate objectively reasonable or good-faith reliance on the warrant, see *Leon*, 468 US at 922-923. Furthermore, the rule from *Franks* also applies to material omissions from search warrant affidavits. *People v Stumpf*, 196 Mich App 218, 224; 492 NW2d 795 (1992); see also *Mullen*, 282 Mich App at 24.

In this case, defendant attached the search warrant affidavit to his motion to suppress in the trial court. The affidavit does not include any reference to the initial search conducted by the Fenton Police officers. However, if an affidavit would still have sufficiently established probable cause to issue a search warrant if the omitted information had been included, then the search warrant is not void and suppression is not necessary because the omission was not *material* and did not affect the probable cause determination. *Mullen*, 282 Mich App at 24, 27-28; see also *Franks*, 438 US at 156. In reviewing whether the affidavit would have sufficiently established probable cause with the missing information included, we must read the affidavit "in a common sense and realistic manner." *Mullen*, 282 Mich App at 27. "Probable cause does not require certainty. Rather, it requires only a probability or substantial chance of criminal activity." *Id*. (quotation marks and citation omitted). "Probable cause to search exists when facts and circumstances warrant a reasonably prudent person to believe that a crime has been committed and that the evidence sought will be found in a stated place." *Id*. (quotation marks and citation omitted).

Here, the affidavit included details of defendant's assault on Ayliffe that occurred inside the vehicle, including that defendant had assaulted Ayliffe with a box cutter, punched her, pulled her hair, bit her, and smashed her cell phone. The fact that the shell casing and controlled substances were not observed during a plain-view search at the scene has no bearing, one way or the other, on the existence of probable cause to conduct a more thorough search of the vehicle in which the victim had reported she had been assaulted by defendant. All that can be said regarding the results of the plain-view search is that contraband that was later discovered during the police

station search was not in plain view, which is further understandable considering the evidence that it was dark outside when defendant was apprehended by Fenton Police officers. Thus, even if the information about the initial search and what it had revealed had been included in the affidavit, a common sense reading of the affidavit would have led a reasonably prudent person to believe that a crime had occurred and that evidence of that crime (such as the weapon, blood, hair, or other physical evidence) would be located in the vehicle. The search warrant affidavit, even including the omitted information, therefore provided sufficient probable cause to support the issuance of the search warrant.

Accordingly, the trial court did not err by denying defendant's motion to suppress because the omitted information was not material and did not affect the probable cause determination. *Id*. at 24, 27-28; see also *Franks*, 438 US at 156.

## IV. AMENDMENT OF THE INFORMATION

Defendant's next argument is somewhat disjointed and unclear, but it appears that defendant merely argues that the trial court erred by allowing the prosecution to amend the information at the close of proofs to elevate an original charge of aggravated assault, MCL 750.81a(1), to AWIGBH.[1]

## A. STANDARD OF REVIEW

The trial court's decision regarding a motion to amend the information is reviewed for an abuse of discretion. *People v Perry*, 317 Mich App 589, 594; 895 NW2d 216 (2016). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes." *Id*.

## B. ANALYSIS

MCR 6.112(H) provides in pertinent part that "[t]he court before, during, or after trial may permit the prosecutor to amend the information or the notice of intent to seek enhanced sentence unless the proposed amendment would unfairly surprise or prejudice the defendant." This Court has held that under MCR 6.112(H), the relevant inquiry in assessing a trial court's decision to permit an amendment to the information is whether the motion to amend caused "unfair" surprise

---

[1] To the extent that defendant's references to due process, the Sixth Amendment of the United States Constitution, and the analogous provision of the Michigan Constitution contained in Const 1963, art 1, § 20, could be understood as attempts to raise these additional constitutional arguments, defendant has completely failed to develop or cogently explain the nature of these arguments, thereby abandoning them. Defendant does not argue that compliance with MCR 6.112(H), which is the rule under which we address his claim of error in the body of our opinion, violates any specific constitutional right. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). An issue is abandoned if an appellant "fail[s] to properly address the merits of his assertion of error." *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004).

or prejudice to the defendant. *People v McGee*, 258 Mich App 683, 687, 692-693; 672 NW2d 191 (2003); see also *Perry*, 317 Mich App at 594 ("A trial court may amend an information at any time before, during, or after a trial, as long as the amendment does not unfairly surprise or prejudice the defendant."). A defendant who fails to articulate how additional time to prepare would have benefitted the defense under circumstances where the prosecution put defendant on notice of the possible amendment at the beginning of trial and the defendant had notice of the underlying factual basis for the proposed amendment thereby fails to demonstrate the existence of surprise or prejudice that is *unfair*. *McGee*, 258 Mich App at 685-686, 691-693; *Perry*, 317 Mich App at 594-595.

In this case, as defendant concedes on appeal, the prosecution notified defendant before jury selection of the possibility of seeking to amend the information to incorporate an AWIGBH charge depending on how the testimony actually came in during the trial. On appeal, defendant does not claim that he was without notice of the underlying facts of the assault alleged, and defendant's vague insinuations that he *might* have conducted his defense "differently" do not give us any sense of how additional time would have actually benefitted the defense. Defendant has not established that the amendment to the information resulted in unfair surprise or prejudice to him. MCR 6.112(H); *McGee*, 258 Mich App at 685-686, 691-693; *Perry*, 317 Mich App at 594-595. Accordingly, the trial court did not abuse its discretion by permitting the amendment.

## V. JURY INSTRUCTIONS

Defendant next argues that the trial court erred with respect to the jury instructions regarding one of the felonious assault charges by failing to orally instruct the jury that it was required to find that defendant committed the charged assault with a pistol.

We conclude that defendant waived any claim of error in this respect. After the trial court instructed the jury, it inquired whether the prosecutor or defense counsel had "[c]orrections, additions, objections" to the instructions. Defense counsel acknowledged that the court had already made a correction regarding the controlled substance charges and then stated, "So, other than that, no others. Thank you, Your Honor."

Our Supreme Court has explained the concept of "waiver" as follows:

> This Court has defined "waiver" as the intentional relinquishment or abandonment of a known right. One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error. When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver. [*People v Traver*, 502 Mich 23, 40-41; 917 NW2d 260 (2018) (quotation marks and citation omitted).]

In this case, defense counsel clearly expressed satisfaction with the trial court's oral instructions and thus waived any error. *Id*. Although defendant subsequently placed an objection on the record regarding the alleged deficiency in the trial court's oral instructions on the felonious assault charge, this objection was not made until the next day of the proceedings and after the jury had already reached a verdict. Instead of timely objecting so as to allow the trial court to address

any claim of instructional error, defendant waived his claim of error as stated above. "Counsel may not harbor error as an appellate parachute." *People v Carter*, 462 Mich 206, 214; 612 NW2d 144 (2000).

We additionally note that defendant does not dispute that the written jury instructions included the missing element on which defendant relies in making his appellate argument. Thus, as in *Traver*, the jury in the instant case "received instructions in some form or another on the elements of all of the offenses—it is only the manner in which the instructions were presented that renders them imperfect." *Traver*, 502 Mich at 40 n 7. The *Traver* Court concluded that the defendant waived any claim of error by expressing satisfaction with the trial court's approach of only providing written instructions on the elements of the charged offenses without also orally instructing the jury on those elements, even though the *Traver* Court also concluded that oral instructions are required under the court rules. *Id*. at 40-41. Hence, the Supreme Court's opinion in *Traver* further supports our conclusion in this case.

Accordingly, defendant is not entitled to relief with respect to this issue.

## VI. DEFENDANT'S PRO SE STANDARD 4 BRIEF.

Finally, in a Standard 4 supplemental brief,[2] defendant argues that the prosecutor violated his constitutional right to a fair trial by allowing Ayliffe to present perjured testimony at trial. Defendant argues that Ayliffe committed perjury by testifying at defendant's trial that she and defendant were using drugs on the night of the assault, which was contrary to Ayliffe's testimony at defendant's preliminary examination that she did not see defendant with any drugs that night. Defendant contends that he is entitled to a new trial because "without the perjured testimony, no other evidence on the record suggests that the defendant possessed any drugs."

### A. PRESERVATION OF THE ISSUE

Defendant did not object to Ayliffe's testimony on the basis that it was false or perjured, or otherwise raise this issue in the trial court. Therefore, this issue is unpreserved. *People v Bass*, 317 Mich App 241, 272; 893 NW2d 140 (2016).

### B. STANDARD OF REVIEW

"It is inconsistent with due process when the prosecution allows false testimony from a state's witness to stand uncorrected," and a "due process violation presents a constitutional question that this Court reviews de novo." *People v Smith*, 498 Mich 466, 475; 870 NW2d 299 (2015). However, unpreserved constitutional issues are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763.

---

[2] Administrative Order No. 2004-6, Standard 4, 471 Mich c, cii (2004).

## C. ANALYSIS

"It is well established that 'a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction . . . .'" *Smith*, 498 Mich at 475-476 (ellipsis in original), quoting *Napue v Illinois*, 360 US 264, 269; 79 S Ct 1173; 3 L Ed 2d 1217 (1959). The prosecution bears "an affirmative duty to correct false testimony . . . ." *Smith*, 498 Mich at 476. "[W]hile not every contradiction is material and the prosecutor need not correct every instance of mistaken or inaccurate testimony, it is the *effect* of a prosecutor's failure to correct false testimony that is the crucial inquiry for due process purposes." *Id*. (quotation marks and citations omitted). "A new trial is required if the uncorrected false testimony 'could . . . in any reasonable likelihood have affected the judgment of the jury.' " *Id*. (ellipsis in original), quoting *Napue*, 360 US at 271-272. The mere existence of a prior inconsistent statement by a witness does not necessarily mean that the witness committed perjury at trial because "[a]lthough an inconsistent prior statement may be a mechanism to impeach a witness's credibility at trial, it is not definitive evidence that the trial testimony is false." *Bass*, 317 Mich App at 275.

In this case, defendant's appellate argument is premised on the assumption that Ayliffe's trial testimony regarding defendant's drug use was false and that her prior statements and preliminary examination testimony failing to indicated that defendant was using drugs that night were true. However, defendant has not provided any evidence to support belief in his assumption over the equally reasonable possibility that her trial testimony was true and her preliminary examination testimony was false. Defendant's failure to demonstrate that false testimony affecting the jury's decision to convict him—i.e. that Ayliffe testified falsely that he was using drugs that night—is fatal to his claim on plain-error review that the prosecution knowingly relied on false testimony to obtain a conviction. See *Bass*, 317 Mich App at 274 ("Defendant has failed to carry his burden of demonstrating that Hines's testimony was actually false, and, therefore, he has not demonstrated that the prosecution's elicitation of that testimony constituted plain error affecting his substantial rights.").

Moreover, defendant is incorrect that Ayliffe's testimony was the only evidence that he possessed controlled substances: defendant ignores the evidence that cocaine and heroin were discovered during the search of defendant's vehicle, in which the assault had occurred. Possession of a controlled substance may be actual or constructive, and possession may also be joint "with more than one person actually or constructively possessing a controlled substance." *Dickinson*, 321 Mich App at 13 (quotation marks and citation omitted).

We additionally note that defendant on appeal fails to acknowledge that Ayliffe was subjected to extensive cross-examination on her inconsistent testimony from the preliminary examination and that Ayliffe admitted that she had been untruthful at the preliminary examination. Ayliffe testified at trial that her preliminary examination testimony had been the result of her fear of admitting her drug problem but that she had since sought treatment for her drug problem. As a result, the jury was aware of the conflicts between Ayliffe's preliminary examination testimony and trial testimony. Hence, this case is distinguishable from the factual circumstances in *Smith*, where the prosecutor "never took any steps to correct or explain" the false or misleading testimony of a key prosecution witness and our Supreme Court held that the defendant was entitled to a new trial on the basis of the prosecutor's exploitation of the witness's false or misleading testimony

that had a reasonable likelihood of having affected the jury's judgment. *Smith*, 498 Mich at 478-483, 485.

Accordingly, defendant has not demonstrated plain error requiring reversal with respect to the prosecution's use of Ayliffe's testimony at trial.

Affirmed.

/s/ Stephen L. Borrello
/s/ Colleen A. O'Brien
/s/ Thomas C. Cameron