*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JAMES LEE POWELL,

      Defendant-Appellant.

UNPUBLISHED
March 11, 2021

No. 350567
Jackson Circuit Court
LC No. 18-004339-FH

Before: MURRAY, C.J., and M. J. KELLY and RICK, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of possession with intent to deliver or manufacture a controlled substance between 50 and 450 grams, MCL 333.7401(2)(a)(*iii*), being a felon in possession of a firearm (felon-in-possession), MCL 750.224f, felon-in-possession of ammunition, MCL 750.224f(6), and three counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced as a third habitual offender, MCL 769.12, to 18 to 40 years' imprisonment for the possession with intent to deliver conviction, 3 to 10 years' imprisonment for each felon-in-possession conviction, and two years' imprisonment for each felony-firearm conviction.[1] We affirm defendant's convictions and sentences, and remand for the ministerial task of correcting the presentence investigation report (PSIR) only.

## I. STATEMENT OF FACTS

This case arises from a search conducted on October 10, 2017, at 818 Helena, in Jackson. Officer Joseph Bradac learned that there was a warrant out for defendant's arrest for absconding from parole. He and his team set up surveillance of the home while Detective Brian Russell obtained a search warrant for defendant and another resident of the home, Joseph Eley, and for firearms. Russell returned to the scene with the SWAT team, and they made an announcement

---

[1] Defendant was resentenced on August 14, 2019, because the original judgment of sentence did not indicate that he was on parole at the time he was convicted. Defendant was resentenced to the same sentences; however, the judgment of resentencing indicates that these sentences must be served consecutive to the time remaining on his parole sentence.

-1-

over the loud speaker of a police vehicle for everyone to exit the house. Other people exited the home, but defendant stayed inside.

The SWAT team entered, and defendant was arrested in the bedroom upstairs where he was trying to hide between the mattress and the box spring. Bradac searched the second floor, which had an open common area and one bedroom. Defendant's clothes and identification were found in this bedroom. Bradac saw what he described as a heating vent in the middle of the floor in the common area upstairs near defendant's bedroom. Bradac opened the vent cover, and found a bag of a white powdery substance and a firearm "hidden" inside. Bradac notified Detective Brett Stiles, who had arrived at the scene, and Stiles took possession of the evidence. The gun was a .40 caliber Smith & Wesson which had rounds inside. Stiles also found a box of .10 mm ammunition and a magazine with .9 mm rounds inside it in defendant's bedroom.

Detective Mark Easter searched the first floor of the residence. In the living room, inside of a coffee table, he found a glass Pyrex measuring cup with a white crumbly substance on it and a scale. Easter believed the substance was crack cocaine. Because the search warrant was only for individuals and firearms, Easter returned to the station to obtain a search warrant for narcotics. Then he returned to the scene and obtained the evidence.

Stiles went to see defendant in jail the next day to execute a search warrant for defendant's DNA to send a known sample to the forensics lab with the gun. Stiles read defendant his *Miranda*[2] warnings, defendant waived his Fifth and Sixth Amendment rights, and Stiles took two buccal swabs from defendant's mouth. The gun found in the vent was sent to the forensics lab for DNA testing and firearm testing. The expert in firearms and firearm functioning, Amanda Roberts, testified that the gun functioned properly, and was capable of firing. The expert in DNA analysis, Samantha Hopcraft, tested the gun for DNA as compared against the known sample taken from defendant's cheek. The DNA from the gun tested for a major male contributor, and a minor contributor. Defendant's DNA matched the major male contributor.

Parole Agent Cheryl Evans went to see defendant in jail two days after his arrest to serve him with charges. First defendant told Evans that he did not realize that there was a gun in the house. Then he told Evans that his fingerprints might be on the ammunition and clip because he helped load the gun, which belonged to the people he was staying with. Then defendant stated that he would "take responsibility" for or plead guilty to the firearm and drugs because he did not want the people he was staying with to lose their daughter. Because defendant said that he would take responsibility for the drugs, Easter did not have them tested for DNA or fingerprints.

Defendant was tried by a jury, and found guilty of all six counts.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence was insufficient to convict him of these crimes because multiple people occupied the home, the evidence was discovered in a common area, and there was no DNA or fingerprint evidence on the drugs.

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

This Court will review a challenge to the sufficiency of the evidence de novo. *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001). The evidence is reviewed "in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006). The standard is "not whether there was any evidence to support the conviction but whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Hampton*, 407 Mich 354, 366; 285 NW2d 284 (1979). When reviewing the evidence, "factual conflicts are to be viewed in a light most favorable to the prosecution." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Furthermore, it is up to the jury to weigh the evidence presented, and evaluate the credibility of witnesses. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

"To convict a defendant of possession with intent to deliver, the prosecution must prove (1) that the recovered substance is a narcotic, (2) the weight of the substance, (3) that the defendant was not authorized to possess the substance, and (4) that the defendant knowingly possessed the substance intending to deliver it." *People v McGhee*, 268 Mich App 600, 622; 709 NW2d 595 (2005). "The element of knowing possession with intent to deliver has two components: possession and intent." *Id.* "Actual physical possession is not required to meet the possession element." *Id.* Rather, possession can be actual or constructive. *Id.* "Constructive possession of an illegal substance signifies knowledge of its presence, knowledge of its character, and the right to control it." *Id.* at 622-623. "Because it is difficult to prove an actor's state of mind, only minimal circumstantial evidence is required." *Id.* at 623. "Circumstantial evidence and the reasonable inferences that arise from the evidence can constitute satisfactory proof of possession." *Id.* "[A] person's presence, by itself, at a location where drugs are found is insufficient to prove constructive possession. Instead, some additional connection between the defendant and the contraband must be shown." *Wolfe*, 440 Mich at 520 (citations omitted). The test for constructive possession is whether the totality of the circumstances revealed a sufficient nexus between the defendant and the contraband. *People v Minch*, 493 Mich 87, 91-92; 825 NW2d 560 (2012).

Uncovered in the raid of 818 Helena was a large package of drugs and a gun hidden together in a floor vent on the second floor. There was no dust on the items, indicating they had been placed there recently. Although defendant argues that the vent was in a "common area," and other people lived in the home,[3] the vent was located right outside defendant's bedroom—the only bedroom located on the second floor. Defendant's clothes and identification were found in that bedroom. Although the drug packaging was not tested for DNA or fingerprints, the drugs were found with the gun which had defendant's DNA on it, and defendant took responsibility for the drugs when interviewed by Evans.

Intent to deliver may be inferred from the quantity of drugs recovered. *Wolfe*, 440 Mich at 524. The amount discovered was 52.92 grams. Easter testified that a typical amount of crack cocaine for personal use is only 0.2 grams. Additional items indicating drug distribution were discovered: four cell phones in defendant's bedroom, a Pyrex measuring cup, and a scale. Defendant was the last person remaining in the home when the search warrant was executed, and was found trying to hide. Evidence of flight is admissible to indicate consciousness of guilt.

---

[3] Possession of narcotics may also be joint, with more than one individual actually or constructively possessing a controlled substance. *Wolfe*, 440 Mich at 520.

*People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). "Witness credibility and the weight accorded to evidence is a question for the jury, and any conflict in the evidence must be resolved in the prosecution's favor." *McGhee*, 268 Mich App at 624. Therefore, when viewed in a light most favorable to the prosecution, the evidence justifies a rational jury's finding that defendant was guilty beyond a reasonable doubt of possession with intent to deliver because he had constructive possession of the drugs.

Felon-in-possession of a firearm or ammunition is a statutory offense set forth by MCL 750.224f and MCL 750.224f(6). The essential elements are (1) the defendant is a felon who possessed a firearm or ammunition (2) before his right to do so was formally restored under MCL 28.424. *People v Bass*, 317 Mich App 241, 267-268; 893 NW2d 140 (2016). "[A] defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant." *People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815 (2011) (quotation marks and citation omitted). The parties stipulated at the beginning of trial to defendant's prior conviction as the basis for the felon-in-possession counts, but did not identify the conviction on the record. Defendant's DNA was a match for the major contributor of the DNA found on the gun. The .40 caliber Smith & Wesson gun had rounds inside. Stiles also found a box of .10 mm ammunition and a magazine with .9 mm rounds inside it in defendant's bedroom. Defendant told Evans that his fingerprints might be on the ammunition and clip because he helped load the gun, and then he said that he would "take responsibility" for the firearm. Moreover, defendant was found trying to hide and arrested in his bedroom, in close proximity to the vent. Thus, the evidence was sufficient to convict defendant of Count III, felon-in-possession of a firearm, and Count V, felon-in-possession of ammunition.

Felony-firearm is also set forth by statute. MCL 750.227b. "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). Here, the three counts of felony-firearm were tied to the one count of possession with intent to deliver and two counts of felon-in-possession. As discussed above, there was sufficient evidence for a rational fact-finder to infer that defendant committed all three of these crimes, all of which are felonies. And the evidence was clear that defendant's DNA matched the major contributor of the DNA found on the gun. Therefore, there was sufficient evidence for a rational fact-finder to find defendant guilty of the three counts of felony-firearm.

## III. DRUG-PROFILE EVIDENCE

Defendant argues that the admission of the drug-profile evidence was plain error because Easter opined that defendant was a drug dealer, and defense counsel was ineffective for failing to object to this testimony.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Defendant did not object to the drug-profile testimony given by Easter at trial. Therefore, this issue is not preserved. *Id*. Unpreserved issues are reviewed for plain error affecting substantial rights. *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). On plain-error review, the defendant has the burden to show (1) "error"; (2) that was "plain," meaning "clear or obvious"; and (3) that affected substantial rights or caused prejudice, meaning "the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "[O]nce a defendant satisfies these

-4-

three requirements, an appellate court must exercise its discretion in deciding whether to reverse," but "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* at 763-764 (citation and quotation marks omitted; last alteration in original).

As an initial matter, defendant argues that the prosecution violated MCL 767.40a because it failed to endorse Easter as an expert witness. Easter was listed on the prosecution's witness list filed in the lower court. None of the witnesses listed are demarcated as expert witnesses; however, other listed witnesses were also qualified as experts at trial (Hopcraft and Roberts). Regardless, MCL 767.40a does not require a party to designate whether a witness is a lay witness or an expert witness.[4]

Even if Easter was not properly endorsed, a trial court's decision whether to permit a late endorsement is reviewed for an abuse of discretion. MCR 6.201(J); *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008). An abuse of discretion occurs only when the court chooses an outcome outside the range of principled outcomes. *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010). Easter testified as to his extensive police education, training, and experience in narcotics investigations. He said that he had never been qualified as an expert before, and defense counsel stated that there was no need to qualify him as an expert here—he could testify according to his training and experience. The trial court nonetheless qualified Easter as an expert in "modus operandi of narcotics investigations." This was not an abuse of discretion, as the court determined that "scientific, technical, or other specialized knowledge [would] assist the trier of fact to understand the evidence or to determine a fact in issue." MRE 702. The determination regarding the qualification of an expert and the admissibility of expert testimony is within the trial court's discretion. *People v Beckley*, 434 Mich 691, 711; 456 NW2d 391 (1990).

Drug-profile evidence has been described as

an informal compilation of characteristics often displayed by those trafficking in drugs. A profile is simply an investigative technique. It is nothing more than a listing of characteristics that in the opinion of law enforcement officers are typical of a person engaged in a specific illegal activity. Drug profile evidence is essentially a compilation of otherwise innocuous characteristics that many drug dealers exhibit, such as the use of pagers, the carrying of large amounts of cash, and the possession of razor blades and lighters in order to package crack cocaine for sale. Such evidence is inherently prejudicial to the defendant because the profile may suggest that innocuous events indicate criminal activity. In other words, these characteristics may not necessarily be connected to or inherently part of the drug trade, so that these characteristics could apply equally to innocent individuals as well as to drug dealers. It is for this reason that the majority of courts have held that drug profile evidence is inadmissible as substantive evidence of guilt, because "proof" of crime based wholly or mainly on these innocuous characteristics could

---

[4] Nor does MCR 6.201, see *People v McLaughlin*, 258 Mich App 635, 657; 672 NW2d 860 (2003), and defendant does not argue, for example, that the prosecution violated MCR 6.201(A)(3) by failing to provide a curriculum vitae and expert report for Easter.

potentially convict innocent people. [*People v Murray*, 234 Mich App 46, 52-53; 593 NW2d 690 (1999) (quotation marks and citations omitted).]

However, courts generally allow expert testimony to explain the significance of items that are seized, and the circumstances of the investigation of criminal activity. *Id*. at 53. The prosecution may use expert testimony from police to help the jury understand evidence in drug-related cases. *Id*. The following requirements must be met for such expert testimony to be admissible: "(1) the expert must be qualified; (2) the evidence must serve to give the trier of fact a better understanding of the evidence or assist in determining a fact in issue; and (3) the evidence must be from a recognized discipline." *Id*. (quotation marks and citation omitted). The expert testimony may not, however, "move beyond an explanation of the typical characteristics of drug dealing—in an effort to provide context for the jury in assessing an alleged episode of drug dealing—and opine that the defendant is guilty merely because he fits the drug profile. Such testimony is inherently prejudicial and constitutes an inappropriate use of the profile as substantive evidence of guilt." *Id*. at 54. The admissibility of profile evidence must be determined on a case-by-case basis. *Id*. at 54-55.

Easter testified that a "rock" of crack is about 0.2 grams, which is an amount for personal use. A typical user might have two to three rocks in their possession at a time. In Easter's experience, he has never come across a crack cocaine user who also cooked their own crack. Easter testified that a scale indicates drug sales because drug dealers want to get accurate measurements, or they lose profit. He testified that drug dealers typically carry more than one cell phone to have one for personal use, and one for sales. Easter testified that the packaged drugs found in the vent upstairs were tested, and were consistent with the substance scraped out of the Pyrex found downstairs. The result of the lab testing was 52.92 grams of crack cocaine. Because an average user has two to three rocks at a time, or 0.4 to 0.6 grams, there were roughly 250 usages in the 52.92 grams discovered. Easter testified that the amount of drugs located, the multiple cell phones, the gun and ammunition, the scale, and the Pyrex, all lead to his conclusion that the drugs were for distribution.

Easter's expert testimony was properly used as admissible modus operandi evidence to assist in explaining the drug trade to the jury. Although the trial court failed to instruct the jury to consider the evidence only as background information, *id*. at 58, the testimony was not used as substantive evidence of guilt. Easter did not directly opine that defendant was guilty. His testimony pertained only to a general drug-dealer profile. Thus, there was no plain error, and the evidence did not prejudice defendant.

Defendant argues that defense counsel's failure to object to the drug-profile evidence constituted ineffective assistance of counsel.

To preserve an ineffective assistance of counsel argument, the defendant must move for a new trial or request an evidentiary hearing. *People v Head*, 323 Mich App 526, 538-539; 917 NW2d 752 (2018). Although defendant moved for a new trial in the trial court acting *in propria persona*, he did not raise this specific allegation of ineffective assistance, nor did the trial court

-6-

ever rule on this motion.[5]  Defendant's appellate counsel and defendant acting *in propria persona* each filed a motion to remand with this Court.  Both motions were denied.[6]  Because defendant's motions to remand were denied, and no evidentiary hearing was held in the trial court, defendant's ineffective assistance of counsel argument is limited to review for errors apparent on the record. *Id.* at 539.  "Whether a defendant was deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law.  Any findings of fact are reviewed for clear error, while the legal questions are reviewed de novo."  *Id.* (citations omitted).

Based on the conclusion that the drug-profile evidence was proper and admissible, any objection by defense counsel would have been futile.  *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004).  Moreover, during closing argument, defense counsel stated that all of the drug-profile testimony offered by Easter seemed like "common knowledge" or "common sense," and that Easter did not provide any real information suggesting that defendant was dealing drugs.  "A party is not allowed to assign as error on appeal something which his or her own counsel deemed proper at trial . . . ."  *Dresselhouse v Chrysler Corp*, 177 Mich App 470, 477; 442 NW2d 705 (1989).  Therefore, defendant cannot establish that he received ineffective assistance in this regard.

## IV.  JUDICIAL BIAS

Defendant argues that the trial judge exhibited partiality in several respects, and therefore exhibited to the jury his support for the prosecution.

To preserve an issue of judicial impartiality, the party must object to the alleged biased conduct at trial.  *People v Stevens*, 498 Mich 162, 180 & n 6; 869 NW2d 233 (2015).  Defendant failed to object to any of the alleged instances of improper conduct at trial.  This issue is unpreserved, *id.*, and therefore reviewed for plain error affecting substantial rights, *Carines*, 460 Mich at 763.

"A trial judge's conduct deprives a party of a fair trial if the conduct pierces the veil of judicial impartiality."  *Stevens*, 498 Mich at 164.  "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party."  *Id.*

> In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors including, but not limited to, the nature of the trial judge's conduct, the tone and demeanor of the judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent

---

[5] The prosecution filed a notice in the trial court that it would not be responding to the several motions filed by defendant acting *in propria persona* because defendant was represented by counsel, and had no right to hybrid representation.  See *People v Kevorkian*, 248 Mich App 373, 420; 639 NW2d 291 (2001) (there is no constitutional right to a hybrid defense).

[6] *People v Powell*, unpublished order of the Court of Appeals, entered June 2, 2020 (Docket No. 350567); *People v Powell*, unpublished order of the Court of Appeals, entered February 2, 2021 (Docket No. 350567).

to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions, either at the time of an inappropriate occurrence or at the end of trial. [*Id*.]

"A single inappropriate act does not necessarily give the appearance of advocacy or partiality, but a single instance of misconduct may be so egregious that it pierces the veil of impartiality." *Id*. at 171. This Court will not evaluate the errors "standing alone," but rather, will consider the "cumulative effect." *Id*. at 171-172.

The reviewing Court should also consider the nature or type of the judicial conduct complained of. *Id*. at 172. Such conduct may come in various forms, including "belittling of counsel, inappropriate questioning of witnesses, providing improper strategic advice to a particular side, biased commentary in front of the jury, or a variety of other inappropriate actions." *Id*. at 172-173. The tone and demeanor of the trial judge displayed in front of the jury should be considered because jurors look to the judge for guidance and instruction, and "are very prone to follow the slightest indication of bias or prejudice." *Id*. at 174 (quotation marks and citation omitted). Trial judges are assumed to be impartial. *Id*. at 175.

During voir dire of the jury panel, the court asked if anyone would have a problem evaluating the testimony of police officers the same as any other witness. The court specifically asked Juror Laura McNeil whether this would be difficult for her, and she said it would not. The court then said:

> *The Court*: All right. A funny story about you and your husband. Years ago when I was a young prosecutor I was trying a case and we're all done, the jury came back and the defendant leaped at me and he said, "McBain, I hope you die," and I was so thankful that your husband's great big mitt was right on the back of his neck when he launched in the courtroom, and of course, I literally told him that I hope he got life. But—but anyway, so you've obviously spent a long time being married to a deputy sheriff and now he's—I think he's working at Spring Arbor?
>
> *Juror McNeil*: Yes, he is.
>
> *The Court*: Any difficulty that you'd have doing that?
>
> *Juror McNeil*: I think I would be fine.

This exchange did not demonstrate judicial bias. The fact that the trial judge was once a prosecutor is irrelevant to the case at hand. It does not lend any credence to the prosecution's case. The fact that the judge also knew the husband of one juror does not establish any bias. That the judge once worked in the same courtroom as the juror's husband does not indicate any relationship that would create a conflict of interest on the part of the judge. Defendant fails to show how this exchange created any advocacy or partiality toward the prosecution.

Defendant argues that several questions asked by the trial court exhibited judicial bias and supported the prosecution's case. First, during direct examination of Stiles, he testified that he obtained the firearm and drug evidence from the scene, and sealed them inside evidence envelopes. When he was opening the envelopes at trial to show the jury the evidence, the court asked what occurred after evidence is boxed up and secured in the evidence room, and Stiles said that it was

placed into a locked locker. The court then asked, "Okay, and then how does it get up to the lab?" And Stiles responded that lab technicians retrieve the evidence from the locker, secure it, and take it to the lab.

Second, after the prosecution ended its direct examination of Stiles, the court made further inquiry regarding the gun found in the vent. The court asked whether the serial numbers were ever run on the gun, and when Stiles responded in the affirmative, the court asked for the result. Stiles said, "It was stolen out of Jackson City."

Third, when the prosecution asked Stiles about the ammunition that was found, the court interjected, "So the only thing that someone would have had to do to make that gun hot is just pullback the slide and let it go?" Stiles responded, "Once the magazine is in it they just have to rack it. . . . To make it hot, yes."

"The court may interrogate witnesses, whether called by itself or by a party." MRE 614(b). "[T]he central object of judicial questioning should be to clarify. Therefore, it is appropriate for a judge to question witnesses to produce fuller and more exact testimony or elicit additional relevant information." *Stevens*, 498 Mich at 173 (citations omitted). None of the questions asked of Stiles by the trial judge rise to the level of judicial bias. They were all meant to clarify the testimony for the benefit of the jury. *Id*. Thus, there was no plain error.

Moreover, "the presence or absence of a curative instruction is a factor in determining whether a court displayed the appearance of advocacy or partiality." *Id*. at 177. "The model jury instructions . . . emphasize that a judge's comments, rulings, and questions do not constitute evidence and that the jury should not attempt to discern the judge's personal opinion while considering the case." *Id*. The jury was instructed at the beginning of trial: "I may ask some of the witnesses questions myself. These questions are not meant to reflect my opinion about the evidence. If I ask questions, my only reason would be to ask about things that may not have been fully explored." This instruction was repeated during the final jury instructions. Jurors are presumed to follow their instructions. *Id*.

Next, defendant argues that the trial judge "buttressed" the testimony of Stiles about "the people nearby that would have helped [defendant] sell drugs." When Stiles went to see defendant the day after the arrest, defendant told Stiles that the people he was staying with were crack cocaine users, and there were other users who lived in two or three of the neighboring houses. Stiles said this put defendant "in a good position."

> [*Prosecutor*]: In your training and experience, what were you thinking?
>
> [*Stiles*]: That he's got at least five clients right there in the area that—
>
> [*Defense Counsel*]: Objection, your Honor, speculation.
>
> *The Court*: Overruled.
>
> [*Stiles*]: That he's got five clients right there—right there in the area that literally all's he's got to do is walk out the door or they got to walk across the street and knock on the door.
>
> *The Court*: But that at least somebody would have that opportunity, correct?

[*Stiles*]:  Someone would, yes.

*The Court*:  That was dealing drugs?

[*Stiles*]:  Absolutely.

The trial judge could properly question Stiles to elicit more information.  MRE 614(b). Although Stiles was not qualified as an expert, the trial court's questioning was to limit the scope of the drug-profile evidence offered.  Drug-profile evidence cannot be used as substantive evidence of guilt, but it can be used to help the jury understand the evidence.  *Murray*, 234 Mich App at 52-53.  The trial judge's question was meant to limit the testimony of Stiles to those characteristics of a typical drug dealer, rather than an improper opinion that defendant *was* a drug dealer.  *Id*. Therefore, there was no plain error, and no judicial bias.

Lastly, defendant alleges that the trial court had ex parte communication with the jury.  He states that "upon information and belief, the judge took the jury instructions and/or the exhibits back to the jury room alone," and due to COVID-19, the circuit court is closed, and "it is impossible to get any information about this issue at this time."  The prosecution asserts that this issue is not properly before this Court as there is nothing in the record to establish that this occurred, and defendant's only offer of proof fails to mention this point.  Indeed, defendant's affidavit filed in support of his brief on appeal and motion to remand does not discuss this allegation.  There is no indication in the trial transcripts that the trial judge ever entered the jury room.[7]

Ex parte communications between a judge and a deliberating jury are highly discouraged. *People v Powell*, 303 Mich App 271, 275; 842 NW2d 538 (2013).  But "[o]nly ex parte communications that have any reasonable possibility of prejudice should result in a new trial."  *Id*. (quotation marks and citation omitted).  Such communications are categorized as substantive, administrative, or housekeeping.  *Id*.  Defendant merely asserts that the trial judge "took the jury instructions and/or the exhibits back to the jury room alone."  This is most properly considered administrative communication.  *People v France*, 436 Mich 138, 143; 461 NW2d 621 (1990).  "An administrative communication carries no presumption" of prejudice.  *Id*.  "The failure to object when made aware of the communication will be taken as evidence that the administrative instruction was not prejudicial."  *Id*.  Defense counsel made no objection to any such

---

[7] Defendant filed several posttrial motions in the trial court acting *in propria persona*.  A motion for a new trial dated April 13, 2019, provides:

> Counsel for the defendant, informed the defendant and his family that, Judge John G. McBain entered the room where the jury was deliberating for about 15 minutes which is a violation of the rules and constitutions, 01-15-2019 in, which, Attorney waited until after defendant had been found guilty and sentenced 03-13-2019, and without an objection, "to reveal this!"

Defendant has not submitted an affidavit of defense counsel or any other offer of proof to establish that this occurred.

communication during trial, evidencing that if this did occur, it was not prejudicial. *Id*. As such, defendant cannot establish judicial bias.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that defense counsel was ineffective for failing to (1) object to judicial bias, (2) have the drug packaging forensically tested, (3) question a potentially biased juror, and (4) make an allocution on defendant's behalf at sentencing.

As stated above, defendant's ineffective assistance of counsel argument is limited to review for errors apparent on the record because his motions to remand were denied, and no evidentiary hearing was held in the trial court. *Head*, 323 Mich App at 539.

To establish ineffective assistance of counsel, the defendant must show that "(1) counsel rendered assistance that 'fell below an objective standard of reasonableness' under prevailing professional norms and (2) that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]' " *People v Muhammad*, 326 Mich App 40, 63; 931 NW2d 20 (2018) (citation omitted, brackets original). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citation omitted). The defendant bears the burden to demonstrate deficient performance and prejudice; thus, the defendant bears the burden of establishing the factual predicate for his claim of ineffective assistance of counsel. *Id*. "Decisions regarding what evidence to present . . . are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). There is a strong presumption that the assistance of counsel constitutes sound trial strategy, which the defendant must overcome. *Id*.

Defendant merely states in his brief on appeal that "Defense counsel also failed to object to the impartiality of the judge and failed to ask for a mistrial. Failing to make these objections and motions fell below an objective standard of reasonableness." "A party may not simply announce a position and leave it to this Court to make the party's arguments and search for authority to support the party's position." *Seifeddine v Jaber*, 327 Mich App 514, 519; 934 NW2d 64 (2019). "Failure to adequately brief an issue constitutes abandonment." *Id*. at 520. In any event, as explained above, there was no judicial bias that denied defendant a fair and impartial trial. The trial judge did not pierce the veil of judicial impartiality by telling a story about a juror's husband or asking questions of the witnesses to clarify the testimony, and there is no evidence of any ex parte communication. Therefore, any objection by defense counsel would have been futile. *Thomas*, 260 Mich App at 457.

Defendant next argues that defense counsel was ineffective for failing to have the packaging of the drugs found in the vent forensically tested for DNA or fingerprints, even though defendant asked him to do so.[8] Defendant argues that a finding of no DNA or fingerprints on the drugs would have supported a not guilty verdict.

---

[8] Defendant's affidavit, attached to his brief on appeal, indicates that he "asked his attorney to have the bag of drugs tested for DNA and fingerprints and his attorney refused his request."

-11-

"Decisions regarding what evidence to present . . . are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). Defense counsel's decision not to have the drug packaging tested was a matter of trial strategy which, under the circumstances, was not unreasonable. The gun found right next to the drugs had defendant's DNA on it, and defense counsel had to argue that defendant's DNA got onto the gun by mere transference through the air into the vent. Although defendant argues that a test result of no DNA on the drugs would have changed the outcome of the proceedings, had the drugs tested positive for defendant's DNA, defense counsel would have faced a bigger challenge of having to argue that defendant's DNA somehow transferred to both the gun and the drugs in the vent through the air. Hopcraft testified that skin cells are constantly sloshing off and can be transferred; however, if DNA transfers, it is in a small amount. A large amount of DNA was found on the gun. Moreover, there was evidence that defendant told Evans that he would "take responsibility" for the drugs. Defense counsel's strategic decision will not be assessed with the benefit of hindsight. *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004).

Defendant also argues that trial counsel was ineffective for failing to further question a potentially biased juror, Juror McNeil. As noted above, during voir dire, the trial court asked the potential jurors whether they would have any difficulty assessing the testimony of police officers the same as any other witnesses. He then told a story about Juror McNeil's husband, who used to be a deputy sheriff, and asked her whether she would have any difficulty assessing police officer testimony, and Juror McNeil said that she would be fine. "Perhaps the most important criteria in selecting a jury include a potential juror's facial expressions, body language, and manner of answering questions." *People v Unger*, 278 Mich App 210, 258; 749 NW2d 272 (2008). "However, as a reviewing court, we cannot see the jurors or listen to their answers to voir dire questions. For this reason, this Court has been disinclined to find ineffective assistance of counsel on the basis of an attorney's failure to challenge a juror." *Id.* (quotation marks and citations omitted). Juror McNeil testified that she would have no difficulty in fairly assessing the testimony of police officers, making no indication of potential bias. Thus, defense counsel surely believed that a fair and honest jury had been empaneled. This Court will not substitute its judgment for that of defense counsel, nor assess his performance with the benefit of hindsight. *Matuszak*, 263 Mich App at 58.

Lastly, defendant argues that he was denied effective assistance of counsel because defense counsel did not give an allocution on behalf of defendant at the original sentencing. Defendant merely states that "[t]his was defense counsel's last opportunity to advocate for Mr. Powell. Failure to do so fell below an objective standard of reasonableness and highlighted defense counsel's lack of effort in this case." "A criminal defendant is entitled to effective assistance of counsel at sentencing." *People v Newton (After Remand)*, 179 Mich App 484, 493; 446 NW2d 487 (1989). At defendant's original sentencing, after defense counsel addressed the challenges to the PSIR, he stated that defendant wanted to address the court. Defendant then spoke on his own behalf. When asked if defense counsel had anything further, defense counsel said no. "The decision to address the court at sentencing is a tactical one." *Id.* at 494. It will not be second guessed by this Court. *Matuszak*, 263 Mich App at 58.[9] Thus, defense counsel was not ineffective.

---

[9] Defendant was represented by a different attorney when he was resentenced, who did make an allocution on defendant's behalf.

VI. SENTENCING GUIDELINES

Defendant argues that the trial court incorrectly scored prior record variable (PRV) 1 at 50 points because a 2004 conviction was actually a plea to possession of drugs rather than possession with intent to deliver, and defense counsel was ineffective for failing to object to the scoring.

Generally, "[t]o preserve a sentencing issue for appeal, a defendant must raise the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals." *People v Clark*, 315 Mich App 219, 223; 888 NW2d 309 (2016) (quotation marks and citations omitted). At the original sentencing, defense counsel stated that there were no challenges to the scoring of the guidelines. However, defendant's appellate counsel filed a motion to remand to the trial court, stating that defendant's "guidelines were misscored requiring resentencing." Therefore, this issue is preserved. *Id*. at 223. This Court reviews de novo the proper interpretation and application of the statutory guidelines, MCL 777.11 *et seq*. *People v Francisco*, 474 Mich 82, 85; 711 NW2d 44 (2006).

> Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [*People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (citations omitted).]

The trial court "must use the sentencing guidelines, as provided by law." MCR 6.425(C). This means that the trial court must consult the sentencing guidelines, calculate the recommended sentencing guidelines sentence range, and take the range into account when determining a defendant's sentence. *People v Lockridge*, 498 Mich 358, 391-392; 870 NW2d 502 (2015). The sentencing court must score all PRVs in addition to the offense variables (OVs). MCL 777.21(1)(a), (b); *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004). "The offender's offense variables score and prior record variables score are then used with the sentencing grids to determine the recommended minimum sentence range under the guidelines." *Morson*, 471 Mich at 255, citing MCL 777.21(1)(c). The purpose of the guidelines is "to insure that sentencing decisions are based on a consistent set of legally relevant factors and that such factors are assigned equal importance for all offenders." *People v Whitney*, 205 Mich App 435, 436; 517 NW2d 814 (1994).

PRV 1 is scored for prior high-severity felony convictions. MCL 777.51. Fifty points are assessed if the offender has two prior high-severity felony convictions, and 25 points are assessed if the offender has one prior high-severity felony conviction. MCL 777.51(1)(b), (c). Possession with intent to deliver a controlled substance, 50 grams or less, MCL 333.7401(2)(a)(4), is a high-severity felony. MCL 777.51(2).

Listed at No. 10 of 17 of defendant's adult criminal history in his PSIR is an August 2, 2004 offense of possession with the intent to deliver or manufacture a controlled substance (cocaine), less than 50 grams. The PSIR indicates a January 12, 2005 plea, and that defendant was sentenced to 60 months' probation, drug court, 180 days in jail, and $574 in costs and fees. Defendant argues that he actually pleaded guilty to possession of a controlled substance, and therefore PRV 1 should have been scored at 25 points rather than 50. Defendant relies on his

affidavit attached to his brief on appeal, stating that "[h]is 2004 drug conviction was actually a plea to possession of drugs, not delivery."

The prosecution, however, points to evidence that it submitted in response to defendant's motion to remand indicating that the 2004 conviction was for possession with intent to deliver, not merely possession. Indeed, attached to the prosecution's answer is a register of actions for the August 2, 2004 offense, indicating that at arraignment on January 11, 2005, defendant "P/G AS CHARGED—CRT ACCEPT PLEA." Also attached is a February 23, 2005 order of probation, indicating the offense was possession with intent to deliver, as well as a February 23, 2005 judgment of sentence, indicating that defendant pleaded guilty to possession with intent to deliver. This evidence matches the information in the PSIR, and therefore, the trial court did not err in assessing defendant 50 points for PRV 1.

Defendant argues that defense counsel's failure to challenge the PRV scoring constituted ineffective assistance of counsel. Because defendant's motions to remand were denied and no evidentiary hearing was held, his unpreserved claims of ineffective assistance of counsel are reviewed for errors apparent on the record. *Head*, 323 Mich App at 539. Because PRV 1 was properly scored, any objection would have been futile. Therefore, defense counsel was not ineffective. *Thomas*, 260 Mich App at 457.

## VII. ACCURACY OF THE PSIR

Defendant argues that he is entitled to resentencing due to inaccuracies in his PSIR.

A challenge to the validity of information contained in the PSIR may be raised at sentencing, in a proper motion for resentencing, or in a proper motion to remand. MCL 769.34(10). Defendant raised other challenges to the PSIR at the original sentencing, but not the same challenges that he now raises on appeal. Defendant did assert, however, in his motion to remand filed by appellate counsel that there were errors in his PSIR that needed to be amended. Therefore, this issue is preserved. *Id*. A trial court's response to a claim of inaccuracies in the PSIR is reviewed for an abuse of discretion. *People v Waclawski*, 286 Mich App 634, 689; 780 NW2d 321 (2009). An abuse of discretion occurs when the trial court selects an outcome outside the range of reasonable and principled outcomes. *Id*.

Either party may challenge the accuracy or relevancy of information contained in the PSIR at sentencing. MCL 771.14(6). It is presumed that the information contained in the PSIR is accurate absent an effective challenge by the defendant. *People v Grant*, 455 Mich 221, 233-234; 565 NW2d 389 (1997). The burden is on the defendant to make an effective challenge to the accuracy of the information. *People v Lloyd*, 284 Mich App 703, 705; 774 NW2d 347 (2009). If an effective challenge is raised, it is then up to the prosecution to prove by a preponderance of the evidence that the facts are as the prosecution asserts. *Id*. "Once a challenge to the accuracy of the PSIR has been alleged, the trial court is required to respond." *Id*. "If the court finds on the record that the challenged information is inaccurate or irrelevant, that finding shall be made a part of the record, the [PSIR] shall be amended, and the inaccurate or irrelevant information shall be stricken accordingly before the report is transmitted to the department of corrections." MCL 771.14(6). Because the Michigan Department of Corrections (MDOC) relies on the PSIR to make critical decisions regarding a defendant's status, it is imperative that the PSIR is accurate. *Lloyd*, 284 Mich App at 705-706.

-14-

Defendant challenges the following sentences contained in the PSIR:

Although he was never charged, the defendant was a suspect in multiple violent crimes in the community including, homicides, shootings, car[]jacking, and possession of firearms and ammo.

\* \* \*

His use of violence has included physical altercations, threats, possession of weapons, and committing crime (Home Invasion 1st and Armed Robbery).

Defendant is correct that at sentencing, the trial court stated that it would not consider other uncharged crimes in its sentencing decision. However, this was in reference to a lab report the prosecution produced as an offer of proof that day, not the first sentence above as defendant did not raise a challenge to it at sentencing. "[I]f the court chooses to disregard the challenged information, it must clearly indicate that it did not consider the alleged inaccuracy in determining the sentence." *People v Maben*, 313 Mich App 545, 554; 884 NW2d 314 (2015). Additionally, defendant asserts that the second sentence above should be stricken because defendant was never *convicted* of first-degree home invasion. The PSIR indicates, however, that in 2005 defendant was initially charged with armed robbery and first-degree home invasion at the time of his arrest, but the final charge was only one count of armed robbery. Thus, defendant has raised two effective challenges to the PSIR, and this matter is remanded to the trial court to strike the two identified sentences from the PSIR. *Lloyd*, 284 Mich at 705-706. Because these are merely clerical corrections to the report, defendant is not entitled to resentencing.

## VIII. DEFENDANT'S STANDARD 4 BRIEF

In his Standard 4 brief, defendant argues that the search warrant affidavit failed to provide probable cause to search the residence, and therefore the evidence was illegally obtained, and defense counsel was ineffective for failing to move to suppress the evidence.

"A motion to suppress evidence must be made prior to trial or, within the trial court's discretion, at trial." *People v Gentner Inc*, 262 Mich App 363, 368; 686 NW2d 752 (2004) (quotation marks and citations omitted). No motion to suppress the evidence obtained during the search of 818 Helena was made before trial or at trial.[10] Because defendant's issue regarding the suppression of evidence is unpreserved, *Gentner, Inc*, 262 Mich App at 368, it is reviewed for plain error affecting substantial rights, *Carines*, 460 Mich at 763.

The United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." US Const, Am IV. The Michigan Constitution also provides, "No warrant to search any place or to seize any person or things . . . shall issue without describing them, nor without probable cause, supported by oath or affirmation." Const 1963, art 1, § 11. A magistrate may only issue a search warrant when " 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *People v Franklin*, 500 Mich 92, 101;

---

[10] Defendant, acting *in propria persona*, moved to suppress the evidence *after* trial and before sentencing. The trial court never ruled on this motion.

894 NW2d 561 (2017), quoting *Illinois v Gates*, 462 US 213, 238; 103 S Ct 2317; 76 L Ed 2d 527 (1983). "A magistrate's finding of probable cause and his or her decision to issue a search warrant should be given great deference and only disturbed in limited circumstances." *Franklin*, 500 Mich at 101. However, there are " 'exceptional circumstances' " when a magistrate's search warrant may be dispensed with, such as, when a search warrant is defective because it is insufficient. *Id.* at 101-102 (citations omitted).

This Court focuses on the facts and circumstances supporting the magistrate's determination of probable cause when reviewing the issuance of a search warrant. *People v Martin*, 271 Mich App 280, 298; 721 NW2d 815 (2006), aff'd 482 Mich 851 (2008). The affidavit for the search warrant must include facts that are within the affiant's knowledge, rather than mere conclusions or beliefs. *Id.* "The affiant may not draw his or her own inferences, but rather must state matters that justify the drawing of them." *Id.* However, an affiant's personal experience is relevant to the establishment of probable cause. *Waclawski*, 286 Mich App at 698. It is presumed that affidavits supporting search warrants are valid. *People v Mullen*, 282 Mich App 14, 23; 762 NW2d 170 (2008). When reviewing an affidavit, this Court must read it in a " 'common sense and realistic manner,' not a crabbed or hypertechnical manner." *Id.* at 27 (citation omitted). This Court reviews a magistrate's decision to issue a search warrant by asking "whether a reasonably cautious person could have concluded that there was a 'substantial basis' for the finding of probable cause." *People v Russo*, 439 Mich 584, 603; 487 NW2d 698 (1992). This Court must ensure that there was a substantial basis for the magistrate's determination that there was a fair probability that contraband or evidence of a crime would be found in a particular place. *Martin*, 271 Mich App at 298.

Probable cause for issuance of a search warrant may be based on hearsay. MCL 780.653; *People v Harris*, 191 Mich App 422, 425; 479 NW2d 6 (1991). When hearsay is the basis for probable cause, the magistrate must determine whether all of the information provided in the affidavit establishes a fair probability that contraband or evidence of a crime will be located in a particular place. *Gates*, 462 US at 238-239. MCL 780.653 provides:

> The judge or district court magistrate's finding of reasonable or probable cause shall be based upon all the facts related within the affidavit made before him or her. The affidavit may be based upon information supplied to the complainant by a named or unnamed person if the affidavit contains 1 of the following:
>
> (a) If the person is named, affirmative allegations from which the judge or district court magistrate may conclude that the person spoke with personal knowledge of the information.
>
> (b) If the person is unnamed, affirmative allegations from which the judge or district magistrate may conclude that the person spoke with personal knowledge of the information and either that the unnamed person is credible or that the information is reliable.

"The personal knowledge element should be derived from the information provided or material facts, not merely a recitation of the informant's having personal knowledge. If personal knowledge can be inferred from the stated facts, that is sufficient to find that the informant spoke with personal knowledge." *People v Stumpf*, 196 Mich App 218, 223; 492 NW2d 795 (1992) (citations omitted). An independent investigation conducted by the police that verifies the accuracy and reliability of

the information provided by an informant supports the issuance of a search warrant. *Waclawski*, 286 Mich App at 699.

Under "facts establishing probable cause or the grounds for search" in the search warrant affidavit, Russell provided his background and experience in law enforcement, and stated that he was assisting the MDOC in locating defendant because he was wanted for violating parole. He stated that surveillance was set up at 818 Helena, and defendant was identified. The affidavit then provides:

> Your Affiant spoke with Det. Stiles of the Jackson Police Department on 10-10-17. Speaking with Det. Stiles I learned [defendant] is the primary suspect [in] a shooting (497-30988-17) which occurred on 10-3-17. Det. Stiles advised during this shooting, two calibers of ammunition were recovered. The ammunition was identified as .40 cal and .45 cal.

Defendant has not demonstrated a plain error with regard to police hearsay. In *Waclawski*, the detective affiant stated that she received a complaint from an Illinois crime unit, and she personally communicated with a detective from that unit to confirm the defendant's criminal activity. *Waclawski*, 286 Mich App at 699. This was sufficient to establish probable cause. *Id*. at 699-700. See also *People v Powell*, 201 Mich App 516, 523; 506 NW2d 894 (1993) (a rape victim was named by a police officer, who was considered presumptively reliable).

Here, Russell stated that he spoke with Stiles, who was named in the affidavit, and Stiles said that defendant was a suspect in a recent shooting. Where an informant is named in an affidavit, it is not necessary to vouch for the informant's credibility in the affidavit. *People v Ulman*, 244 Mich App 500, 514; 625 NW2d 429 (2001). And police officers are presumptively reliable for purposes of information supporting issuance of a search warrant. *Powell*, 201 Mich App at 523. Viewing this evidence in a common sense and realistic manner, a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause to issue the search warrant. *Russo*, 439 Mich at 603. Thus, the search warrant affidavit was sufficient to establish probable cause to search the residence for firearms and ammunition, and defendant has failed to establish a plain error affecting his substantial rights.[11]

Defendant also argues in his Standard 4 brief that defense counsel's failure to move to suppress the evidence obtained as a result of the search warrant constituted ineffective assistance of counsel. As defendant's issue of ineffective assistance of counsel is unpreserved because his motion to remand was denied and no evidentiary hearing was held, it is reviewed for errors apparent on the record. *Head*, 323 Mich App at 539. Because the search warrant was sufficient to establish probable cause, the evidence was not illegally obtained. Moreover, as the prosecution points out in its supplemental brief, a parolee must provide written consent to submit to a search of his person or property by a police officer or parole officer as a condition of parole. MCL

---

[11] Defendant seemingly makes a "fruit of the poisonous tree" argument in his Standard 4 Brief by arguing that his DNA was unlawfully obtained by Stiles the day after defendant's arrest because this search was "predicated off" of the search warrant for the firearms. This argument lacks merit as a separate search warrant affidavit and search warrant were executed for defendant's DNA.

791.236(19). Therefore, any motion to suppress would have been futile, and defense counsel was not ineffective. *Thomas*, 260 Mich App at 457.

## IX. CONCLUSION

Defendant's convictions and sentences are affirmed. This matter is remanded for the ministerial task of striking the challenged provisions from the PSIR only. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Michael J. Kelly
/s/ Michelle M. Rick